Filed 6/30/16

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S211275 |
| v. | ) | |
| | ) | Ct.App. 3 C070272 |
| PATRICK LEE CONLEY, | ) | |
| | ) | Yolo County |
| Defendant and Appellant. | ) | Super. Ct. No. CRF113234 |
| _____ | ) | |

Under the "Three Strikes" law as originally enacted in 1994, an individual convicted of any felony offense following two prior convictions for serious or violent felonies was subject to an indeterminate term of life imprisonment with a minimum term of no less than 25 years. (Pen. Code, former §§ 667, subds. (b)-(i), 1170.12, subd. (c)(2).) In 2012, the electorate passed the Three Strikes Reform Act of 2012 (Reform Act or Act) (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012)), which amended the law to reduce the punishment prescribed for certain third strike defendants. The electorate also authorized persons "presently serving" an indeterminate term of life imprisonment imposed under the prior version of the law to seek resentencing under the amended penalty scheme by filing a petition for recall of sentence. (Pen. Code, § 1170.126, subd. (a).) Under the Act, a court must grant a recall petition unless it determines that resentencing the petitioner "would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

**SEE CONCURRING OPINION**

1

The Reform Act took effect on November 7, 2012.  The question in this case is whether third strike defendants who were sentenced under the Three Strikes law before November 7, 2012, but whose judgments were not yet final as of that date, are entitled to automatic resentencing under the revised penalty provisions of the Reform Act.  We conclude that these defendants are not entitled to automatic resentencing, but instead may seek resentencing by petitioning for recall of sentence under section 1170.126.

**I.**

**A.**

Enacted "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses" (Pen. Code, former § 667, subd. (b), as amended by Stats. 1994, ch. 12, § 1, pp. 71, 72), the Three Strikes law "consists of two, nearly identical statutory schemes."  (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504 (*Romero*).)  The first of these schemes was enacted by the Legislature in March 1994.  (Pen. Code, former § 667, subds. (b)-(i).)  The second was enacted by ballot initiative in November of the same year.  (Pen. Code, former § 1170.12, added by Prop. 184, as approved by voters, Gen. Elec. (Nov. 8, 1994) (Proposition 184).)  The two statutes differ only in minor respects not relevant here.  (Accord, *Romero*, at p. 505.)[1]

Under the Three Strikes law as originally enacted, a felony defendant who had been convicted of a single prior serious or violent felony (a second strike defendant) was to be sentenced to a term equal to "twice the term otherwise

---

[1]     For convenience, we therefore refer in this opinion to the version enacted by Proposition 184.  Our decision, however, applies equally to both.

provided as punishment for the current felony conviction." (Pen. Code, former § 1170.12, subd. (c)(1).) By contrast, a defendant who had been convicted of two or more prior serious or violent felonies (a third strike defendant) was to be sentenced to "an indeterminate term of life imprisonment with a minimum term of" at least 25 years. (Pen. Code, former § 1170.12, subd. (c)(2).)

The Reform Act changed the sentence prescribed for a third strike defendant whose current offense is not a serious or violent felony. (See *Teal v. Superior Court* (2014) 60 Cal.4th 595, 596-597.) Under the Reform Act's revised penalty provisions, many third strike defendants are excepted from the provision imposing an indeterminate life sentence (see Pen. Code, § 1170.12, subd. (c)(2)(A)) and are instead sentenced in the same way as second strike defendants (see *id.,* subd. (c)(2)(C)): that is, they receive a term equal to "twice the term otherwise provided as punishment for the current felony conviction" (*id.*, subd. (c)(1)). A defendant does not qualify for this ameliorative change, however, if his current offense is a controlled substance charge involving large quantities (*id.*, subd. (c)(2)(C)(i)), one of various enumerated sex offenses (*id.*, subd. (c)(2)(C)(ii)), or one in which he used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury (*id.*, subd. (c)(2)(C)(iii)). The ameliorative provisions of the Reform Act also do not apply in cases in which the defendant was previously convicted of certain enumerated offenses, including those involving sexual violence, child sexual abuse, homicide or attempted homicide, solicitation to commit murder, assault with a machine gun on a peace officer or firefighter, possession of a weapon of mass destruction, or any serious or violent felony punishable by life imprisonment or death. (§ 1170.12, subd. (c)(2)(C)(iv)(I)-(VIII).) The Act provides that these disqualifying factors must be pleaded and proved by the prosecution. (§ 1170.12, subd. (c)(2)(C).)

3

In the Reform Act, the voters also established a procedure for "persons presently serving an indeterminate term of imprisonment" under the prior version of the Three Strikes law to seek resentencing under the Reform Act's revised penalty structure. (Pen. Code, § 1170.126, subd. (a).) Under section 1170.126, "within two years after the effective date of the act . . . or at a later date upon a showing of good cause," such persons can file a petition for a recall of sentence before the trial court that entered the judgment of conviction. (*Id*., subd. (b).) If the petitioner would have qualified for a shorter sentence under the Reform Act version of the law, taking into consideration the disqualifying factors (§ 1170.126, subds. (e), (f)), section 1170.126 provides that he "shall be resentenced pursuant to [the Reform Act] unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety" (*id*., subd. (f)). In exercising this discretion, the court may consider the defendant's criminal conviction history, the defendant's disciplinary record and record of rehabilitation while incarcerated, and "[a]ny other evidence the court . . . determines to be relevant." (*Id*., subd. (g).)

**B.**

In October 2010, a California Highway Patrol officer observed defendant Patrick Lee Conley retrieving tools from the middle of a county road.[2] Defendant's pickup truck was parked nearby, partially blocking a lane of the road. Defendant appeared to be intoxicated and smelled of alcohol. At first, defendant claimed that his son had been driving the truck and had gone to get gas, but later defendant admitted that he had been the driver. Defendant also admitted that he had consumed a few cans of malt liquor at his son's house. After defendant failed

---

[2]     We take the facts from the opinion of the Court of Appeal.

4

a series of field sobriety tests, the highway patrol officer arrested him. Defendant's blood was drawn at a hospital approximately an hour after he was first stopped. Testing showed defendant's blood alcohol content (BAC) was 0.19 percent.

Following a jury trial, defendant was convicted of driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)) and driving with a BAC level of 0.08 percent or more (*id.*, § 23152, subd. (b)), with enhancements for refusing to take a chemical test (*id.*, § 23578).[3] The jury also found true allegations that defendant had four prior convictions for driving under the influence of alcohol (see Veh. Code, § 23550), that he had served three prior prison terms (Pen. Code, § 667.5), and that he had two prior convictions that qualified as strikes under the Three Strikes law (Pen. Code, § 1170.12). The first prior strike conviction was for a residential burglary in which defendant — then on parole for a different first degree burglary that he committed as a juvenile — entered a home, while armed and wearing a stocking over his face, and assaulted and bound the occupant. The second prior strike conviction was for a physical altercation in which defendant stabbed his opponent multiple times. On January 23, 2012, the trial court denied defendant's motion to dismiss one or both strike allegations (see *Romero*, *supra*, 13 Cal.4th at p. 504), citing the details of defendant's prior offenses, his poor parole record, and his attempt to evade responsibility for his current offense by shifting the blame to his son. The court sentenced defendant under the Three Strikes law to an indeterminate term of 25 years to life (Pen. Code, former

---

[3] Defendant also pleaded no contest to driving with driving privilege suspended due to a driving-under-the-influence conviction (with three prior violations within the preceding five years) (Veh. Code, § 14601.2, subd. (a)), failure to provide proof of insurance (*id.*, § 16028), and driving an unregistered vehicle (*id.*, § 4000, subd. (a)(1)).

5

§ 1170.12, subd. (c)(2)), plus three consecutive one-year terms for his three prior prison terms (Pen. Code, § 667.5).

Defendant appealed, raising no issues but asking the Court of Appeal to independently review the record under *People v. Wende* (1979) 25 Cal.3d 436. While defendant's appeal was pending, the voters enacted the Reform Act on November 6, 2012. Two days later, the Court of Appeal issued an opinion affirming defendant's conviction.

Defendant petitioned for rehearing, asking the Court of Appeal to vacate his sentence and remand the matter to the trial court for resentencing under the new sentencing provisions of the Three Strikes law. Although the Court of Appeal initially denied the petition, it later granted rehearing on its own motion to more fully explain its reasoning. The court noted that, under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), courts ordinarily presume that newly enacted legislation lessening a criminal punishment is intended to apply "to all cases not yet reduced to final judgment on the statute's effective date." The court concluded, however, that the *Estrada* presumption is inapplicable here because the Reform Act includes a procedure whereby "persons presently serving an indeterminate term of imprisonment [under the Three Strikes law]" (Pen. Code, § 1170.126, subd. (a)) may file a petition for recall of sentence. Observing that this provision does not distinguish between persons serving final sentences and those serving nonfinal sentences, the court concluded that "[t]hose already sentenced and serving an indeterminate term of imprisonment must petition the trial court for a recall of sentence regardless of whether or not their judgment is final."

We granted defendant's petition for review to resolve a conflict in the Courts of Appeal about the application of the Reform Act to defendants who had been sentenced to indeterminate life terms under the previous version of the Three Strikes law but whose sentences were not yet final when the Act took effect.

6

## II.

In answering the question presented, we begin by identifying common ground. Defendant is a "person[] presently serving an indeterminate term of imprisonment" under the prior version of the Three Strikes law. (Pen. Code, § 1170.126, subd. (a); see, e.g., *People v. Buckhalter* (2001) 26 Cal.4th 20, 30-31 [a defendant's sentence of imprisonment begins to run upon the delivery of the defendant to the custody of the Director of Corrections], citing Pen. Code, § 2900, subds. (a), (c).) Therefore, under the plain language of the Reform Act, defendant is entitled to seek the benefit of the Act's reduced penalties by filing a petition to recall his sentence and requesting resentencing under the new law. (Pen. Code, § 1170.126, subd. (b).)

Defendant argues, however, that he and others whose judgments were not yet final as of the effective date of the Reform Act are entitled to *automatic* resentencing under the revised penalty provisions of the Act, without the need to file a recall petition under Penal Code section 1170.126, and thus without regard to whether the trial court determines that resentencing the defendant would pose "an unreasonable risk of danger to public safety." (*Id.*, subd. (f).) He relies for his argument on this court's decision in *Estrada*, *supra*, 63 Cal.2d 740, which held that new laws that reduce the punishment for a crime are presumptively to be applied to defendants whose judgments are not yet final.

In *Estrada*, we considered the retroactive application of a statutory amendment that reduced the punishment prescribed for the offense of escape without force or violence. "The problem," we explained, "is one of trying to ascertain the legislative intent — did the Legislature intend the old or new statute to apply? Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional." (*Estrada*, *supra*, 63 Cal.2d at p. 744.) But in the absence of any textual indication of the

7

Legislature's intent, we inferred that the Legislature must have intended for the new penalties, rather than the old, to apply. (*Id.* at pp. 744-745.) We reasoned that when the Legislature determines that a lesser punishment suffices for a criminal act, there is ordinarily no reason to continue imposing the more severe penalty, beyond simply " 'satisfy[ing] a desire for vengeance.' " (*Id.* at p. 745, quoting *People v. Oliver* (1956) 1 N.Y.2d 152, 160.) Thus, we concluded, "[i]t is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply," including "to acts committed before its passage[,] provided the judgment convicting the defendant of the act is not final." (*Estrada*, *supra*, 63 Cal.2d at p. 745.)

Because the *Estrada* rule reflects a presumption about legislative intent, rather than a constitutional command, the Legislature (or here, the electorate) may choose to modify, limit, or entirely forbid the retroactive application of ameliorative criminal-law amendments if it so chooses. Thus, as we explained in *Estrada*, the presumption does not govern when the statute at issue includes a "saving clause" providing that the amendment should be applied only prospectively. (*Estrada*, *supra*, 63 Cal.2d at p. 747; see *People v. Floyd* (2003) 31 Cal.4th 179, 184-188.) And we have since made clear that, while such express statements unquestionably suffice to override the *Estrada* presumption, the "absence of an express saving clause . . . does not end 'our quest for legislative intent.' " (*People v. Nasalga* (1996) 12 Cal.4th 784, 793, quoting *In re Pedro T.* (1994) 8 Cal.4th 1041, 1049 (*Pedro T.*).) Our cases do not "dictate to legislative drafters the forms in which laws must be written" to express an intent to modify or limit the retroactive effect of an ameliorative change; rather, they require "that the Legislature demonstrate its intention with sufficient clarity that a reviewing court

can discern and effectuate it." (*Pedro T.*, *supra*, 8 Cal.4th at pp. 1048-1049; accord, *Nasalga*, *supra*, 12 Cal.4th at p. 793.)

In *Pedro T.*, for example, we concluded that the *Estrada* presumption did not govern the interpretation of a " 'sunset' " provision attached to legislation increasing the maximum punishment for vehicle theft. (*Pedro T.*, *supra*, 8 Cal.4th at p. 1045.) Although the legislation contained no express saving clause, we concluded that the presumption did not control where the overarching purpose of the legislation was to temporarily increase, rather than to decrease, the penalties for the offense. We reaffirmed that, "[o]rdinarily when an amendment lessens the punishment for a crime, one may reasonably infer the Legislature has determined imposition of a lesser punishment on offenders thereafter will sufficiently serve the public interest." (*Ibid.*) But we concluded that "[i]n the case of a 'sunset' provision attached to a temporary enhancement of penalty, the same inference cannot so readily be drawn." (*Ibid.*; see *id.* at pp. 1045–1046.) We further reasoned that giving controlling weight to the *Estrada* presumption would have "practical effect[s]" the Legislature could not have intended: It would both undermine "[t]he utility of a three-year legislative experiment in enhanced penalties" and "provide a motive for delay and manipulation in criminal proceedings." (*Pedro T.*, at pp. 1046–1047.)

Here, a similar set of interpretive considerations persuades us that the voters who passed the Reform Act did not intend to authorize automatic resentencing for third strike defendants serving nonfinal sentences imposed under the former version of the Three Strikes law. First, unlike the statute at issue in *Estrada*, *supra*, 63 Cal.2d 740, the Reform Act is not silent on the question of retroactivity. Rather, the Act expressly addresses the question in section 1170.126, the sole purpose of which is to extend the benefits of the Act retroactively. Section 1170.126 creates a special mechanism that entitles all

9

persons "presently serving" indeterminate life terms imposed under the prior law to seek resentencing under the new law. By its terms, the provision draws no distinction between persons serving final sentences and those serving nonfinal sentences, entitling both categories of prisoners to petition courts for recall of sentence under the Act.

The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not. (See *Estrada*, *supra*, 63 Cal.2d at p. 745.) In enacting the recall provision, the voters adopted a different approach. They took the extraordinary step of extending the retroactive benefits of the Act beyond the bounds contemplated by *Estrada* — including even prisoners serving *final* sentences within the Act's ameliorative reach — but subject to a special procedural mechanism for the recall of sentences already imposed. In prescribing the scope and manner of the Act's retroactive application, the voters did not distinguish between final and nonfinal sentences, as *Estrada* would presume, but instead drew the relevant line between prisoners "presently serving" indeterminate life terms — whether final or not — and defendants yet to be sentenced.

Second, the nature of the recall mechanism and the substantive limitations it contains call into question the central premise underlying the *Estrada* presumption: that when an amendment lessens the punishment for a crime, it is reasonable to infer that the enacting legislative body has categorically determined that "imposition of a lesser punishment" will in all cases "sufficiently serve the public interest." (*Pedro T.*, *supra*, 8 Cal.4th at p. 1045.)

There can be no doubt that the Reform Act was motivated in large measure by a determination that sentences under the prior version of the Three Strikes law

10

were excessive. As the ballot materials argued, "[p]eople convicted of shoplifting a pair of socks, stealing bread or baby formula don't deserve life sentences." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012), rebuttal to argument against Prop. 36, p. 53.) But voters were motivated by other purposes as well, including the protection of public safety. The ballot materials explained that "dangerous criminals are being released early from prison because jails are overcrowded with nonviolent offenders who pose no risk to the public." (*Ibid.*) Voters were told that the Reform Act would protect public safety by "prevent[ing] dangerous criminals from being released early" (*ibid.*) and would have no effect on "truly dangerous criminals" (*id.*, argument in favor of Prop. 36, p. 52).

The recall procedures in Penal Code section 1170.126 were designed to strike a balance between these objectives of mitigating punishment and protecting public safety by creating a resentencing mechanism for persons serving indeterminate life terms under the former Three Strikes law, but making resentencing subject to the trial court's evaluation of whether, based on their criminal history, their record of incarceration, and other relevant considerations, their early release would pose an "unreasonable risk of danger to public safety." (*Id.*, subd. (f).)

Where, as here, the enacting body creates a special mechanism for application of the new lesser punishment to persons who have previously been sentenced, and where the body expressly makes retroactive application of the lesser punishment contingent on a court's evaluation of the defendant's dangerousness, we can no longer say with confidence, as we did in *Estrada*, that the enacting body lacked any discernible reason to limit application of the law with respect to cases pending on direct review. On the contrary, to confer an automatic entitlement to resentencing under these circumstances would undermine the apparent intent of the electorate that approved section 1170.126: to create

11

broad access to resentencing for prisoners previously sentenced to indeterminate life terms, but subject to judicial evaluation of the impact of resentencing on public safety, based on the prisoner's criminal history, record of incarceration, and other factors. This public safety requirement must be applied realistically, with careful consideration of the Reform Act's purposes of mitigating excessive punishment and reducing prison overcrowding. But given that section 1170.126, by its terms, applies to all prisoners "presently serving" indeterminate life terms, we can discern no basis to conclude that the electorate would have intended for courts to bypass the public safety inquiry altogether in the case of defendants serving sentences that are not yet final.

Finally, unlike in *Estrada*, the revised sentencing provisions at issue in this case do more than merely reduce previously prescribed criminal penalties. They also establish a new set of disqualifying factors that preclude a third strike defendant from receiving a second strike sentence. (See Pen. Code, § 1170.12, subd. (c)(2)(C).) The sentencing provisions further require that these factors be "plead[ed] and prove[d]" by the prosecution. (*Ibid.*)

These provisions add an additional layer of complexity to defendant's request for automatic resentencing under the revised penalty scheme. In cases arising after the Reform Act's effective date, operation of the pleading-and-proof requirements is straightforward enough. But for defendants who have already been tried and sentenced, the matter would be considerably more complicated. Before the Reform Act, prosecutors may have had no reason to plead and prove the new disqualifying factors in a particular case. Take, for example, the application of the "armed with a firearm" disqualifying factor (Pen. Code, § 1170.12, subd. (c)(2)(C)(iii)) in the case of a prisoner serving an indeterminate life term for possessing a firearm as a felon. (Pen. Code, § 29800, subd. (a); cf. *People v. White* (2014) 223 Cal.App.4th 512.) Case law holds that possession of a

12

firearm does not necessarily imply being armed; "a convicted felon may be found to be a felon in possession of a firearm if he or she knowingly kept a firearm in a locked offsite storage unit even though he or she had no ready access to the firearm and, thus, was not armed with it." (*White*, at p. 524.) Before the Reform Act, the prosecution ordinarily would have had no reason to plead and prove that the defendant was actually armed with, not merely in possession of, the firearm; arming is not an element of the offense, and case law suggests that the armed-with-a-firearm enhancement (Pen. Code, § 12022, subd. (a)) does not apply to the offense of felon in possession of a firearm (see *People v. Hicks* (2014) 231 Cal.App.4th 275, 283-284). Thus, if the Reform Act version of the Three Strikes law applied retroactively to a defendant who was appealing a felon-in-possession conviction, then the defendant might receive a second strike sentence without the prosecution ever having had occasion to plead and prove that the defendant was disqualified from receiving that sentence on account of being armed with, not just in possession of, the firearm.

Similar difficulties would arise in applying the "intent to cause great bodily injury" disqualifying factor. (Pen. Code, § 1170.12, subd. (c)(2)(C)(iii).) Before the Reform Act became law, the prosecution ordinarily would have had no reason to plead and prove a defendant's *intent* to cause great bodily injury. (Cf. Pen. Code, § 12022.7 [creating an enhancement for *inflicting* great bodily injury].)[4] Thus, much as in the case of the "armed with a firearm" factor, if the Reform Act version of the Three Strikes law applied retroactively to a defendant who was

---

[4]     Penal Code section 12022.7 at one time included a specific intent requirement (see *People v. Colantuono* (1994) 7 Cal.4th 206, 222), but that requirement was deleted from the statute in 1995 (Stats. 1995, ch. 341, § 1, p. 1851).

appealing a conviction involving the infliction of great bodily injury, the defendant might receive a second strike sentence without the prosecution ever having had occasion to plead and prove that the defendant was actually disqualified from receiving that sentence under section 1170.12, subdivision (c)(2)(C).

In short, application of the Reform Act's revised sentencing scheme would not be so simple as mechanically substituting a second strike sentence for a previously imposed indeterminate life term. Unless defendants were to be resentenced solely based on the existing trial court record — leaving the prosecution without the opportunity to plead and prove the presence of disqualifying factors or offenses that have become newly relevant under the Act — trial courts presumably would have to permit prosecutors to hold mini-trials for the sole purpose of determining whether, for example, the defendant's offense of conviction involved arming with a firearm or an intent to cause great bodily injury (see Pen. Code, § 1170.12, subd. (c)(2)(C)(iii)).

As defendant points out, such single-issue trials would not be unprecedented. (See *People v. Figueroa* (1993) 20 Cal.App.4th 65 [setting aside the jury's true finding on an enhancement after an amendment to the law narrowed the enhancement's scope, but remanding to permit the prosecution to prove the enhancement as more narrowly defined].) But the question before us is not whether such trials are possible. The question is whether this is the system the voters intended to create, though no provision of the Act contains any affirmative indication to that effect. We find it difficult to escape the conclusion that the Act does not address the complexities involved in applying the pleading-and-proof requirements to previously sentenced defendants precisely because the electorate did not contemplate that these provisions would apply. Rather, voters intended for previously sentenced defendants to seek relief under section 1170.126, which

14

contains no comparable pleading-and-proof requirements.  (See Pen. Code, § 1170.126, subd. (e)(2), (3).)

## III.

Defendant objects that this analysis is inconsistent with *Estrada*, s*upra*, 63 Cal.2d 740, which he reads to mean that "a defendant whose judgment is not final is *entitled* to the benefit of a lighter penalty in the absence of a clear indication to the contrary."  Defendant argues that in the absence of an express statement that section 1170.126 was meant to provide the exclusive means for defendants with nonfinal sentences to seek resentencing under the Act, section 1170.126 should be understood as supplementing, rather than supplanting, such defendants' entitlement to automatic resentencing.  He further argues that the recall provision expressly preserves this "right" in subdivision (k), which states that "[n]othing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the defendant."  (Pen. Code, § 1170.126, subd. (k).)  Neither argument is persuasive.

As noted, our decision in *Estrada*, *supra*, 63 Cal.2d 740, recognizes that the retroactive application of ameliorative changes to the criminal laws is ultimately governed by the intent of the legislative body.  And we have expressly rejected the notion that *Estrada* "dictate[s] to legislative drafters the forms in which laws must be written to express the legislative intent."  (*Pedro T.*, *supra*, 8 Cal.4th at pp. 1048-1049.)  "[W]hat *is* required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it."  (*Id*. at p. 1049.)  As explained above, the text, structure, and purposes of the Act all lead to the conclusion that the electorate meant what it said when it approved section 1170.126:  Prisoners presently serving indeterminate life terms imposed under the prior version of the Three Strikes law, including those with nonfinal judgments, may seek resentencing under the Act, but subject to judicial

15

determination of whether resentencing would pose an unreasonable danger to the public.

That being the case, section 1170.126, subdivision (k) cannot help defendant's argument. Subdivision (k) contains no indication that automatic resentencing — as opposed to, for example, habeas corpus relief — ranks among the "rights" the electorate sought to preserve. A careful reading of the statute points to the opposite conclusion: The voters authorized defendant and others similarly situated to seek resentencing under the recall provisions of section 1170.126, but they did not intend to confer a right to automatic resentencing under the amended penalty provisions of the Reform Act.[5]

### IV.

We affirm the judgment of the Court of Appeal.


**KRUGER, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**

---

**5** Defendants with nonfinal judgments who did not file petitions for recall of sentence within the mandated two-year period (see Pen. Code, § 1170.126, subd. (b)) because they were litigating the question of automatic resentencing will generally have good cause for filing late petitions (*ibid.*), and therefore they will not be deprived of the resentencing mechanism that the electorate created for them.

16

**CONCURRING OPINION BY WERDEGAR, J.**

I concur in the court's decision that defendant, who was serving a third-strike life term when the Three Strikes Reform Act of 2012 (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012) (Reform Act or act)) took effect, may seek relief under the act only through the statutory procedure for recalling the sentence (Pen. Code, § 1170.126)[1] even though his judgment of conviction was not yet final. Because I concur, I also necessarily agree that *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) does not require a different result. As the author of the court's opinion in *In re Pedro T.* (1994) 8 Cal.4th 1041 (*Pedro T.*), and the only current member of the court who participated in that case, I write separately to explain its significance.

To conclude that *Estrada*, *supra*, 63 Cal.2d 740, does not govern our interpretation of the Reform Act is a relatively straightforward exercise. *Estrada* articulates a presumption of statutory construction: "[A]n amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date" (*People v. Floyd* (2003) 31 Cal.4th 179, 184, citing *Estrada*, at p. 744), unless the enacting body "clearly signals its intent to make the amendment prospective, by the inclusion of either an express savings clause or its equivalent" (*People v. Nasalga* (1996) 12 Cal.4th

---

[1]     All further statutory citations are to the Penal Code.

784, 793 (*Nasalga*), citing *Estrada*, at p. 747).  A savings clause is a provision in which the lawmakers articulate how the amended law is to apply, if at all, to cases decided under the prior law.  This is precisely the effect of the Reform Act's provision for recalling sentences.  The recall provision offers, to all "persons presently serving an indeterminate term of imprisonment" (§ 1170.126, subd. (a)) under the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12), an opportunity to seek sentence reductions, without regard to whether the judgments underlying those sentences are final or not.  (See maj. opn., *ante*, at pp. 7, 9–10.)  Thus, the recall provision both functions as a saving clause and clearly signals the drafters' intent that the revised penalty provisions apply prospectively.  (See maj. opn., *ante*, at p. 10.)

In contrast to the Reform Act and the statute at issue in *Estrada*, *supra*, 63 Cal.2d 740, the law we construed in *Pedro T.*, *supra*, 8 Cal.4th 1041, expressly declared the Legislature's intention not to mitigate, but rather to " '*enhance . . . penalties.*' " (*Id.* at p. 1046, quoting Stats. 1989, ch. 930, § 1, p. 3247, italics added.)  Enacted to support "an experimental study of the deterrent effect of enhanced penalties" (*Pedro T.*, at p. 1046), the statute temporarily increased the punishment for vehicle thefts committed within a three-year period, and then automatically reinstated the prior, lower punishment for offenses committed thereafter through a " 'sunset' " provision.  (*Id.* at p. 1043.)  Asked whether *Estrada*, *supra*, 63 Cal.2d 740, required retroactive application of the sunset provision, we concluded it did not.  The sunset provision did not include a savings clause or its equivalent.  But retroactive sentence reductions would have compromised the experiment's validity, and thus defeated the statute's purpose, by reducing the data set from a three-year sample of offenders to a smaller sample "comprised only of those whose convictions happened to become final before the sunset date of the increased penalties." (*Pedro T.*, at p. 1046.)  In other words,

2

applying the *Estrada* presumption would have violated the important rule that we do not interpret legislation in a manner that would render it "an idle act" by the Legislature or "a nullity." (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 634.)

This was the context for our observation in *Pedro T.*, *supra*, 8 Cal.4th 1041, that, "[d]espite broad language in *Estrada* regarding the necessity of express saving clauses, . . . courts [cannot] dictate to legislative drafters the forms in which laws must be written to express the legislative intent. Rather, what *is* required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it." (*Pedro T.*, at pp. 1048–1049, fn. omitted.) While we thus declined to apply the *Estrada* presumption to defeat the purpose of a statute expressly intended to increase penalties, we did not abandon the presumption or replace it with a holistic inquiry into legislative intent concerning prospective versus retroactive operation. Indeed, just two years after *Pedro T.*, this court strongly reaffirmed *Estrada* and pointedly declined the Attorney General's invitation to abrogate it. (*Nasalga*, *supra*, 12 Cal.4th at p. 792 & fn. 7.) Neither does today's decision abrogate *Estrada*.

*Estrada*, *supra*, 63 Cal.2d 740, has now governed our application of statutes reducing punishment for half a century. Our consistent application of the presumption articulated in that case assists the state's lawmakers in predicting and controlling the manner in which statutes mitigating punishment are applied. As explained above, I view the court's decision as consistent with our prior decisions on the subject, and on that basis I concur.

**WERDEGAR, J.**

WE CONCUR:

LIU, J.
CUÉLLAR, J.

3

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Conley

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 211 Cal.App.4th 953
**Rehearing Granted**

_____

**Opinion No.** S211275
**Date Filed:** June 30, 2016

_____

**Court:** Superior
**County:** Yolo
**Judge:** Stephen L. Mock

_____

**Counsel:**

Patrick Lee Conley, in pro. per.; and Carol Foster, under appointment by the Supreme Court, for Defendant and Appellant.

Michael S. Romano for Three Strikes Project as Amicus Curiae on behalf of Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ivan P. Marrs, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Carol Foster
Central California Appellate Program
2407 J Street, Suite 301
Sacramento, CA  95816
(916) 441-3792

Ivan P. Marrs
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 324-0069