Filed 2/9/24 Opinion on transfer from Supreme Court

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C097389 |
| Plaintiff and Respondent, | (Super. Ct. No. CM026600) |
| v. | |
| KELLY VAUGHN KIMBLE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Butte County, Corie J. Caraway, Judge.  Affirmed.

William Safford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and John W. Powell, Deputy Attorneys General, for Plaintiff and Respondent.

1

In November 2008, the trial court sentenced defendant Kelly Vaughn Kimble to 25 years to life under the former Three Strikes law, plus an additional year for a prior prison term enhancement. In October 2022, defendant appeared for resentencing pursuant to Senate Bill No. 483 (2021-2022 Reg. Sess.) (Senate Bill 483) (Stats. 2021, ch. 728, § 3), codified as Penal Code section 1172.75.[1] [2] At the hearing, the trial court struck defendant's prior prison term enhancement, but otherwise left his sentence intact. Defendant appealed, arguing the trial court erred in resentencing him under Senate Bill 483 without applying the revised penalty provisions of the Three Strikes Reform Act of 2012 (Reform Act or Act) (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012)). The Attorney General countered that defendant was not entitled to resentencing under the Reform Act as part of his resentencing under Senate Bill 483.

In our original opinion, filed July 14, 2023, we agreed with the Attorney General and affirmed the judgment. Two weeks later, the Attorney General filed a petition for rehearing, informing us that his position had changed, and that he now conceded defendant was entitled to application of the Reform Act's revised penalties at his 2022 resentencing. The Attorney General did not explain the basis for his change in position, cite to any recent authority that might have triggered the sudden reversal, or point out any errors of law or fact in our opinion.[3] After due consideration of the Attorney General's rehearing petition, it was denied on the merits.

---

[1]     Undesignated section references are to the Penal Code.

[2]     This statute was formerly section 1171.1, but it was renumbered to section 1172.75. (Assem. Bill No. 200 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 58, § 12).)

[3]     In his petition for rehearing, the Attorney General explained in a footnote that his "position [would] be fully articulated" in an amicus curiae brief he intended to file three days later in an unrelated matter, *People v. Superior Court* (*Guevara*) (2023) 97 Cal.App.5th 978, 995 (*Guevara*), petition for review pending, petition filed January 9, 2024, S283305. That amicus curiae brief, filed on August 2, 2023, is not part of the record in this case. We discuss the now-filed *Guevara* opinion *infra*.

On October 25, 2023, the Supreme Court granted review and transferred the matter back to us with directions to vacate the decision and "reconsider the cause in light of the Attorney General's concession that defendant was entitled to resentencing under the revised penalty provisions of the Three Strikes Reform Act. (Cal. Rules of Court, rule 8.528(d).)" After transfer, defendant filed a supplemental opening brief, again arguing his position and noting the Attorney General's late concession on the issue of resentencing. The Attorney General filed no brief in response.

Having carefully reconsidered the matter, we again decline to accept the Attorney General's bare concession. As a general rule, we are not bound by concessions made by the People in a criminal case. (*People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1021.) And here, we are not inclined to give the Attorney General's concession significant deference, as the issue before us turns on a question of statutory interpretation, such that the analysis is not invalidated simply by a change in party position.

It also is worth highlighting that while the Supreme Court's basis for granting review appears to be the Attorney General's concession, he has declined to take any position after transfer. Defendant, however, advances new arguments in his supplemental brief following the Supreme Court's transfer order. We will address these contentions, and explain why the judgment is properly affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2008, a jury found defendant guilty of stalking (§ 646.9) which, at the time, constituted a third strike, as he had prior convictions for attempted kidnapping and criminal threats. Accordingly, the trial court sentenced defendant to 25 years to life under the Three Strikes law (former §§ 667, subds. (b)-(i), 1170.12), plus a one-year prior prison term enhancement. (§ 667.5, subd. (b).) We affirmed his sentence on appeal. (*People v. Kimble* (Dec. 28, 2009, C060478) [nonpub. opn.].)

In 2013, defendant filed a petition for resentencing under section 1170.126, subdivision (b) of the then newly-enacted Reform Act. As defendant's third strike was

3

not a violent or serious felony, defendant argued that he was eligible to be resentenced as a second strike offender under the Reform Act's revised sentencing provisions.[4] However, after considering People's the evidence of defendant's dangerousness, including the violent nature of defendant's prior criminal acts, his poor performance on probation and parole, and acts of misconduct while in prison for the current offense, and allowing defendant to testify, the trial court found defendant would pose "an unreasonable risk of danger to the public if released" under section 1170.126, subdivision (f) and declined to resentence him as a second strike offender.  Defendant appealed, and we affirmed the trial court's ruling.  (*People v. Kimble* (July 14, 2014, C073819) [nonpub. opn.].)

Effective January 1, 2022, Senate Bill 483 invalidated most prior prison term enhancements, including the one imposed on defendant.  In July 2022, the trial court appointed counsel, who filed a petition for recall of defendant's sentence and requested a full resentencing hearing.  Defendant argued in his briefing that Senate Bill 483 invalidated his prior prison term enhancement and mandated a full resentencing, applying all ameliorative changes made to California's penal laws, including the Reform Act.

At the resentencing hearing, the trial court stated that it was "declining to exercise [its] discretion to strike any enhancements or reduce the sentence, but for the one year prior prison term."  Defense counsel objected, stating that Senate Bill 483 required a "complete resentencing," meaning the trial court had to "start over again" with "existing laws."  The trial court responded, "I have gone over the existing laws, and I'm declining to exercise my discretion."  Defendant appealed.

---

[4] Defendant's other two strikes for attempted kidnapping and criminal threats qualify as violent and serious felonies under section 1192.7, subdivision (c)(20) and (38).

DISCUSSION

This case focuses on the interplay of two ameliorative changes made to our state's sentencing laws—the Reform Act and Senate Bill 483—each of which has its own resentencing mechanism. Defendant was most recently considered for resentencing under Senate Bill 483's recall and resentencing procedure. Defendant argues that because Senate Bill 483 requires the trial court to conduct a full resentencing, it was required to apply the ameliorative sentencing changes adopted by voters in the Reform Act. Defendant asserts that if the trial court had followed the law, he would automatically have been resentenced as a second strike offender, which would have reduced his prison term to, at most, 10 years, qualifying him for release from prison. The Attorney General, before articulating a contrary position in his rehearing petition, argued that Senate Bill 483 does not authorize trial courts to bypass the Reform Act's own voter-approved resentencing mechanism. Rather, when a sentence is final—as defendant's has been since 2009—the Reform Act provides for a distinct resentencing procedure that defendants must follow in order to seek discretionary relief under the Reform Act. We agree with the position initially taken by the Attorney General in this case and reaffirm the conclusions reached in our prior opinion.

I

*Senate Bill 483*

In October 2021, the Governor signed Senate Bill 483. Effective January 1, 2022, the bill added section 1171.1, later renumbered as section 1172.75, to the Penal Code, which provides: "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid." (§ 1172.75, subd. (a).)

Section 1172.75 also describes how relief is obtained under the statute. First, the Department of Corrections and Rehabilitation notifies the sentencing court of a person in

5

its custody who currently is serving a prison term that includes a section 667.5 enhancement. (§ 1172.75, subd. (b).) This notification vests the trial court with jurisdiction to review the judgment and recall and resentence the defendant after verifying that his or her sentence includes a qualifying enhancement. (§ 1172.75, subd. (c).) A key provision for purposes of this case provides that, at resentencing, "[t]he court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).)

## II

### *The Reform Act*

The other sentencing scheme we consider is the Reform Act, an initiative measure that prospectively ameliorated penalties under the Three Strikes law. (Former §§ 667, subds. (b)-(j), 1170.12.) Under its revised penalty provisions, "many third strike defendants are excepted from the provision imposing an indeterminate life sentence (see [former] § 1170.12, subd. (c)(2)(A)) and are instead sentenced in the same way as second strike defendants (see *id*., subd. (c)(2)(C)): that is, they receive a term equal to 'twice the term otherwise provided as punishment for the current felony conviction' (*id*., subd. (c)(1))." (*People v. Conley* (2016) 63 Cal.4th 646, 653 (*Conley*).)

For defendants being sentenced for the first time after the Reform Act's November 2012 effective date, section 1170.12 sets forth the Act's sentencing rules, which generally require prosecutors to "plead and prove each prior serious or violent felony conviction." (§ 1170.12, subd. (d)(1).) The prosecutor also must have "pled and proved" any factors that would disqualify the defendant from second strike sentencing, which include present and prior convictions for various specified felonies, including use of a firearm, or intent to cause great bodily harm. (§ 1170.12, subd. (c)(2)(C).)

In contrast, for offenders like defendant who were sentenced under the former Three Strikes law, the Reform Act created a specific resentencing process in section

6

1170.126, which permits "persons presently serving an indeterminate term of imprisonment" under the Three Strikes law to apply for resentencing.  (§ 1170.126, subd. (a).)  To do so, any such person may petition for a recall of sentence within certain time parameters to request resentencing in accordance with the amended sentencing scheme created by the Reform Act.  (§ 1170.126, subd. (b).)  Subdivision (e), in turn, defines which inmates are eligible for resentencing under the law.  (§ 1170.126, subd. (e).)

"If the petitioner satisfies the criteria in subdivision (e), the petitioner shall be resentenced pursuant to paragraph (1) of subdivision (e) of Section 667 and paragraph (1) of subdivision (c) of Section 1170.12 *unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety*."  (§ 1170.126, subd. (f), italics added.)  In making this risk determination, the court may consider "(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (g).)

" ' "In interpreting a voter initiative . . . , we apply the same principles that govern statutory construction.  [Citation.]" [Citation.]  " 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.  [Citations.]' " [Citation.]  The issue is one of the interpretation of a statute and its applicability to a given situation, a question of law we review independently.  [Citations.]' [Citation.]  We cautioned that ' " ' "[t]he meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.  [Citation.]" ' " [Citation.]  " '[W]e do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the

7

whole may be harmonized and retain effectiveness." [Citation.]' [Citation.]" [Citation.]' [Citation.]" (*People v. Arias* (2015) 240 Cal.App.4th 161, 168.)

III

*Analysis*

Defendant argues that because Senate Bill 483 requires trial courts to apply "any other changes in law that reduce sentences or provide for judicial discretion" at resentencing (§ 1172.75, subd. (d)(2)), the trial court was required to apply the Reform Act's revised sentencing rules (§ 1170.12) without regard to the Act's distinct resentencing mechanism. (§ 1170.126.) This approach would be inconsistent with the text and intent of the Reform Act, as we explain.

Our analysis is initially guided by our Supreme Court's decision in *Conley*, *supra*, 63 Cal.4th 646, in which the court analyzed the purpose of the Reform Act's resentencing mechanism. Specifically, the court considered whether life-term prisoners whose judgments were not yet final when the Reform Act went into effect were automatically entitled to resentencing under the new law (applying the *Estrada*[5] presumption of retroactivity), or whether those prisoners instead had to petition for resentencing under section 1170.126. (*Conley*, at pp. 651-652, 655.) It held that petitioning under section 1170.126 was the path intended by voters, and that the law did not "confer a right to automatic resentencing under the amended penalty provisions of the Reform Act." (*Conley*, at p. 662, fn. omitted.) It further found that *Estrada* did not govern its analysis and that previously-sentenced defendants could not bypass the Reform Act's resentencing mechanism and be automatically resentenced, even if their judgments were not final. (*Conley*, at pp. 661-662.) In reaching this conclusion, the court reasoned that resentencing under section 1170.126 was conditioned on considerations of public safety. (*Conley*, at pp. 658-659.) Specifically, it noted that the recall procedure made

_____

[5]     *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).

8

"resentencing subject to the trial court's evaluation of whether, based on their criminal history, their record of incarceration, and other relevant considerations, their early release would pose an 'unreasonable risk of danger to public safety.'  [(§ 1170.126, subd. (f)].)" (*Conley*, at p. 658.)  Consequently, the court found that permitting automatic resentencing under the Reform Act would "undermine the apparent intent of the electorate that approved section 1170.126:  to create broad access to resentencing for prisoners previously sentenced to indeterminate life terms, but subject to judicial evaluation of the impact of resentencing on public safety, based on the prisoner's criminal history, record of incarceration, and other factors."  (*Id.* at p. 659.)  The court could "discern no basis to conclude that the electorate would have intended for courts to bypass the public safety inquiry altogether in the case of defendants serving sentences that are not yet final." (*Ibid.*)

It further found relevant that for defendants who are sentenced under the Reform Act, the law requires a prosecutor to "plead and prove" disqualifying factors.  (*Conley*, *supra*, 63 Cal.4th at p. 659, citing § 1170.12, subd. (c)(2)(C).)  But for defendants whose sentences were imposed under the prior Three Strikes law, section 1170.126's petition process lacks these same pleading and proof requirements.  (*Conley*, at pp. 659-660.) This suggested to the court that the petitioning process under section 1170.126 was the only path for relief under the Reform Act for defendants who had already been sentenced. (*Conley*, at pp. 659-660.)  Otherwise, it reasoned, courts would have to permit "mini-trials" on disqualifying factors for those individuals who had been sentenced, but whose sentences were not yet final:  "We find it difficult to escape the conclusion that the Act does not address the complexities involved in applying the pleading-and-proof requirements to previously sentenced defendants precisely because the electorate did not contemplate that these provisions would apply.  Rather, voters intended for previously sentenced defendants to seek relief under section 1170.126, which contains no

9

comparable pleading-and-proof requirements. (See [] § 1170.126, subd. (e)(2), (3).)" (*Id.* at pp. 660-661.)

The reasoning in *Conley* applies here with equal force.

The Reform Act's resentencing provisions provide that "[u]pon receiving a petition for recall of sentence under this section," the court shall determine (1) if defendant qualifies for resentencing and, if so, (2) whether resentencing the petitioner would nonetheless pose an unreasonable risk of danger to public safety. (§ 1170.126, subd. (f).) If we did as defendant asks and allowed the Reform Act's sentencing rules to be applied directly as part of a Senate Bill 483 resentencing hearing, this would circumvent the Reform Act's petition and recall process and effectively *mandate* that the trial court resentence defendant as a second strike offender, without regard to the potential risk he poses. The trial court could not consider defendant's criminal history, disciplinary record, or other relevant information under section 1170.126, subdivision (f) to decide whether to deny relief based on public safety concerns. This result would conflict with the Reform Act's intent to protect the public from people who pose an unreasonable risk of danger to public safety. Such an outcome would be particularly worrisome in this case, given that the trial court previously found under section 1170.126, subdivision (f) that defendant did pose an unreasonable risk of danger to public safety.

Further, without the Reform Act's resentencing process, the trial court would have to permit—as *Conley* noted—mini-trials to allow prosecutors to plead and prove any disqualifying factors under section 1170.12, subdivision (c)(2)(C). This would inject an additional, and potentially substantial, burden on the trial court during the resentencing process. As our Supreme Court explained, "no provision of the Act contains any affirmative indication" that the voters contemplated this effect. (*Conley*, *supra*, 63 Cal.4th at p. 660.)

The Reform Act permits an inmate to petition for resentencing "within two years after the effective date of the act that added this section or at a later date upon a showing

of good cause." (§ 1170.126, subd. (b).) These discrete time parameters suggest that voters intended inmates to seek resentencing under the Reform Act within a reasonable time after its enactment, absent a showing of good cause. Here, defendant sought and received the resentencing hearing to which he was entitled within the allotted statutory period. Nothing in the Reform Act contemplates resentencing outside the confines of that law.

Senate Bill 483's resentencing mechanism itself supports the conclusion we reach today. Section 1172.75, subdivision (d)(2) provides that at resentencing, "[t]he court shall . . . apply any other changes in law that reduce sentences or provide for judicial discretion so as to *eliminate disparity of sentences* and to *promote uniformity of sentencing*." (§ 1172.75, subd. (d)(2), italics added.)

Applying the Reform Act in the manner urged by defendant would frustrate section 1172.75, subdivision (d)(2)'s intent to promote uniformity of sentencing by carving out a favorable exception for a specific subset of defendants—those sentenced under the former Three Strikes law who may be eligible for resentencing as second strike offenders and who received a prior prison term enhancement within the ambit of Senate Bill 483. This exception would grant those defendants mandatory relief under the Reform Act, requiring the court to resentence them as second strike offenders, while leaving otherwise similarly-situated inmates with only the Reform Act's (time-limited) petition process as a path to resentencing, with its assessment of disqualifying factors and discretionary weighing of safety and recidivism considerations. Such a result would be at odds with Senate Bill 483's plainly stated objective of promoting uniformity, and eliminating disparities, in sentencing.

In his original briefing, and again in his supplemental brief after transfer, defendant relies heavily on *People v. Monroe* (2022) 85 Cal.App.5th 393 (*Monroe*) as support for his position, but we find *Monroe* distinguishable. *Monroe* holds that Senate Bill 483 entitles a defendant to a full resentencing under section 1172.75, which includes

11

the application of two recently enacted, retroactive, ameliorative sentencing statutes: Senate Bill No. 620 (2017-2018 Reg. Sess.) (Senate Bill 620) (Stats. 2017, ch. 682, §§ 1, 2, eff. Jan. 1, 2018), and Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393) (Stats. 2018, ch. 1013, §§ 1-2, eff. Jan. 1, 2019). (*Monroe*, *supra*, at pp. 400-402.) *Monroe* states that a defendant gets the benefit of both statutes at resentencing under Senate Bill 483, even if the finality of defendant's sentence renders him or her independently ineligible for retroactive resentencing under those statutes. (*Monroe*, at pp. 400-402.) That is because, *Monroe* reasons, Senate Bill 483 mandates that the trial court conduct a full resentencing. (*Monroe*, at p. 402.)

However, Senate Bills 620 and 1393 are plainly distinct from the Reform Act. Both imbue the trial court with discretion to strike enhancements (for Senate Bill 620, firearm enhancements, and for Senate Bill 1393, serious felony enhancements), either prospectively, at sentencing, or retroactively, for those whose sentences are not yet final. (§§ 12022.5, 12022.53, 1385.) As the *Monroe* court notes, neither statute applies independently to judgments that are final. (*Monroe*, *supra*, 85 Cal.App.5th at p. 401.) Thus, the sentencing laws contemplated in *Monroe* are unlike the Reform Act, which creates its own prospective resentencing mechanism. Indeed, Senate Bill 620, by its own terms, expressly applies "to any resentencing that may occur pursuant to any other law." (§ 12022.53, subd. (h).) In contrast, "[t]he provisions of the three strikes law . . . expressly apply notwithstanding any other law (§§ 667, subd. (d), 1170.12, subd. (b)), thus evidencing the Legislature's and electorate's intent that they prevail over all contrary law." (*People v. Arias*, *supra*, 240 Cal.App.4th at pp. 167-168; see also § 1170.12, subd. (a).) Thus, to the extent Senate Bill 483 offers a conflicting resentencing scheme to the Reform Act, the Three Strikes law specifically provides that its provisions are to prevail over other laws, such as Senate Bill 483. Accordingly, the analysis underlying *Monroe* does not control our result.

12

The two statutory schemes we examine here are not so irreconcilable and inconsistent that they cannot coexist or operate concurrently. (*People v. Chenze* (2002) 97 Cal.App.4th 521, 526.) Defendant's prior prison term enhancement was stricken under Senate Bill 483. Defendant, like many similarly-situated inmates who are now eligible to have their prior prison term enhancements stricken under this law, previously petitioned for relief under the Reform Act more than a decade ago, but was denied relief based on the risk he posed to public safety. Thus, there is no injustice in the result we reach today, as the statutes exist as independent resentencing schemes, which were accessed—albeit in separate proceedings—by defendant.

In defendant's view, as expressed on transfer, Senate Bill 483 authorizes a full resentencing, effectively vacating the original judgment (and sentence) and entitling defendant to the application of all current laws, including the current version of the Three Strikes law. Defendant's contentions rest on the premise that the presumption articulated in *Estrada* is irrelevant to our analysis. He asserts that we need not consider the finality of his judgment, or assess the Reform Act's retroactivity for purposes of resentencing under Senate Bill 483; we simply apply the Reform Act's reduced sentencing scheme to defendant's sentence prospectively, without consideration of section 1170.126's resentencing provisions, because Senate Bill 483 entitles defendant to be resentenced as if we were writing on a blank slate. We disagree.

In *Estrada*, the Supreme Court held that "where the amendatory statute mitigates punishment and there is no saving[s] clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed." (*Estrada*, *supra*, 63 Cal.2d at p. 748.) "The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." (*Conley*, *supra*, 63 Cal.4th at p. 657.) Whether we apply subsequent changes to punishments at a resentencing still requires that we

13

examine the retroactive application of the amended law and inquire into the application of the *Estrada* rule. (See *People v. Ramirez* (2021) 71 Cal.App.5th 970, 994-999 [analyzing the retroactive application of statutes at resentencing under *Estrada*].) Courts may not indiscriminately apply every ameliorative change in the law at resentencing without analyzing the scope of its intended application under *Estrada*. To be sure, section 1172.75, subdivision (d)(2)'s general mandate to "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing" does not support such an approach.

Here, the Reform Act's resentencing provisions provide indications that its ameliorative changes were not meant to apply as broadly as defendant argues. As discussed *ante*, the Reform Act included a mechanism for those seeking resentencing under the amended law. Thus, the voters were not silent on the question of retroactivity or the breadth of application of ameliorative changes in the Reform Act. Quite the opposite; they created section 1170.126 as an avenue for those previously sentenced as third strike offenders, which requires specific consideration of various factors, and contains pleading and proof requirements. "Where, as here, the enacting body creates a special mechanism for application of the new lesser punishment *to persons who have previously been sentenced*, and where the body expressly makes retroactive application of the lesser punishment contingent on a court's evaluation of the defendant's dangerousness, we can no longer say with confidence, as we did in *Estrada*, that the enacting body lacked any discernible reason to limit application of the law with respect to cases pending on direct review." (*Conley*, *supra*, 63 Cal.4th at pp. 658-659, italics added.) We reaffirm our view that we are bound by *Conley* to conclude that, as to defendant, even during a full resentencing, the Reform Act's revised penalty provisions cannot be applied.

14

Our conclusion that Senate Bill 483 does not trigger automatic resentencing under the Reform Act has since been joined by the majority in the Second District's recently published opinion, *Guevara*, *supra*, 97 Cal.App.5th 978, 995.  *Guevara* held that accepting the defendant's interpretation would unconstitutionally eliminate the Reform Act's voter-approved public safety analysis for those inmates serving an indeterminate term with a prior prison enhancement.  (*Guevara*, at pp. 984-985.)  This analysis relied on the Reform Act's requirement, referenced herein, that the Legislature may only amend the Act by a statute passed by a two-thirds vote of the membership (Prop. 36, § 11(b)), which Senate Bill 483 did not receive.[6]  (*Guevara*, at p. 985.)  The majority therefore concluded that the defendant's interpretation of section 1172.75, subdivision (d) would unconstitutionally subvert the voter's intent that the Reform Act balance the harshness of the original Three Strikes law against public safety concerns.  (*Guevara*, at pp. 985-986.)

In reaching this conclusion, *Guevara* distinguished *People v. Buycks* (2018) 5 Cal.5th 857, 893, a case defendant also relies on for the proposition that recalling a sentence requires the court to conduct a full resentencing, and not simply strike the enhancement.  (*Guevara*, *supra*, 97 Cal.App.5th at p. 985, citing *Buycks*, *supra*, at p. 893.)  *Guevara* explained that "*Buycks* concerned Proposition 47 (approved Nov. 4,

---

**6**      Although not raised by the parties in this case, defendant's argument could be read to suggest that the Legislature intended to amend the Reform Act by supplanting its resentencing provisions with Senate Bill 483's resentencing scheme.  But the "Legislature may not amend an initiative statute without subsequent voter approval unless the initiative permits such amendment, 'and then only upon whatever conditions the voters attached to the Legislature's amendatory powers.' " (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 568.)  Here, the Reform Act states in relevant part that the Legislature may only amend the Reform Act via statute if the statute passes with a two-thirds vote.  (Prop. 36, approved by the voters at Gen. Elec. (Nov. 6, 2012).)  Senate Bill 483 passed with less than two-thirds support.
(See <https://leginfo.legislature.ca.gov/faces/billVotesClient.xhtml?bill_id=202120220SB483> [as of July 11, 2023], archived at <https://perma.cc/BD94-TGUF>.)  Thus, to the extent defendant's proposed interpretation might require us to find that Senate Bill 483 amended the Reform Act, we would reject that contention.

2014) reclassifying certain drug and theft offenses from felonies and wobblers to misdemeanors," and addressed "whether it was appropriate to strike felony-based enhancements after the underlying offenses were reduced to misdemeanors. *Buycks* did not involve resentencing procedures for three strikes inmates under the Reform Act." (*Guevara*, at p. 985.) The *Guevara* court declined to "speculate what the Legislature may have intended in enacting section 1172.75, subdivision (d)," as "[e]ven if it did intend to provide for complete resentencing for such inmates as Guevara, the statute would not miraculously become constitutional." (*Ibid.*)

Based on the foregoing, we again conclude that the trial court did not err in failing to resentence defendant under the Reform Act as part of his resentencing pursuant to section 1172.75.

## DISPOSITION

The judgment is affirmed.

_____\\s\\_____,
Krause, J.

We concur:

_____\\s\\_____,
Renner, Acting P. J.

_____\\s\\_____,
Boulware Eurie, J.

16