[No. F070609. Fifth Dist. May 16, 2017.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR ALEXANDER MARQUEZ, Defendant and Appellant.

THE SUPREME COURT OF CALIFORNIA GRANTED REVIEW IN THIS MATTER
(see Cal. Rules of Court, rules 8.1105(e)(1)(B), 8.1115(e)) July 26, 2017, S242660.

**COUNSEL**

Jerome P. Wallingford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Acting Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein, Peter H. Smith and Stephanie A. Mitchell, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PEÑA, J.—**

## INTRODUCTION

Defendant Victor Alexander Marquez was just four months shy of his 18th birthday when he brutally murdered Maria Juarez by stabbing and slashing her 19 times during an attempted robbery. Judge Gerald F. Sevier presided over defendant's trial and sentenced him to life without the possibility of parole (LWOP) for special circumstance murder. While defendant's original appeal was pending, the United States Supreme Court decided *Miller v. Alabama* (2012) 567 U.S. 460 [183 L.Ed.2d 407, 132 S.Ct. 2455] (*Miller*). *Miller* held that mandatory LWOP sentences for juvenile homicide offenders violated the federal Constitution's Eighth Amendment prohibition against cruel and unusual punishment. In defendant's first appeal, we recognized

California does not provide for mandatory LWOP sentences for minors convicted of murder, and the sentencing court understood this aspect of its statutory sentencing discretion. Nevertheless, we reversed the judgment and remanded the matter to the trial court to reconsider defendant's LWOP sentence after applying the individualized sentencing criteria set forth in *Miller*. (*People v. Marquez* (June 25, 2013, F063837) [nonpub. opn.].)

Judge Gary L. Paden conducted the resentencing hearing. After considering the *Miller* criteria, Judge Paden again imposed an LWOP sentence. Defendant contends the trial court misapplied the *Miller* criteria and argues his sentence constitutes cruel and unusual punishment under the Eighth Amendment. In supplemental briefing, defendant contends Proposition 57, the Public Safety and Rehabilitation Act of 2016 (Proposition 57 or the act) passed by the voters on November 8, 2016, applies retroactively to his case. Defendant argues the initiative ended the practice employed here of allowing the prosecutor to directly file a case involving a juvenile offender in adult criminal court rather than first conducting a suitability hearing as now required by the amended provisions of the Welfare and Institutions Code. As we explain in the unpublished portion of this opinion, the trial court properly evaluated the *Miller* criteria. In the published portion, we conclude the suitability hearing provisions of Proposition 57 are not retroactive.

## FACTS AND PROCEEDINGS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

1. *Application of* Miller *Criteria on Resentencing**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *Retroactivity of Proposition 57*

 Approximately three months after Maria Juarez was murdered, the district attorney's office directly charged defendant in criminal court with first degree murder, pursuant to Welfare and Institutions Code section 707, subdivision (b).[2] Proposition 57, passed by the voters on November 8, 2016, no longer permits a prosecutor to direct file serious felony cases involving

---

*See footnote, *ante*, page 816.

[2] Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

juveniles in adult criminal court. The parties have filed supplemental briefing on the issue of whether Proposition 57 applies retroactively to compel a juvenile court to conduct a fitness hearing to determine if a juvenile can be tried in adult criminal court. Defendant argues the initiative effectively reduces his punishment and provides an affirmative defense to the direct filing procedure and should therefore be applied to him retroactively. The People contend the law is prospective, it changes only juvenile court procedure, and it does not affect the penalty imposed. We agree with the People and the recent decision from the First District Court of Appeal in *People v. Cervantes* (2017) 9 Cal.App.5th 569 [215 Cal.Rptr.3d 174] (*Cervantes*) and the Sixth District Court of Appeal in *People v. Mendoza* (2017) 10 Cal.App.5th 327 [216 Cal.Rptr.3d 361] (*Mendoza*).

*Juvenile Provisions of Proposition 57*

Before a minor could be tried in adult court, California historically required a finding of unfitness for juvenile court. (*Cervantes, supra*, 9 Cal.App.5th at p. 595; *Juan G. v. Superior Court* (2012) 209 Cal.App.4th 1480, 1489 [147 Cal.Rptr.3d 816].) Beginning with the passage of Proposition 21 in March 2000, the district attorney was authorized as a matter of executive discretion to file an action against a juvenile directly in adult criminal court under certain defined circumstances. This practice is known as "direct filing" or "discretionary direct filing." (*Cervantes, supra*, at p. 596.) The procedural change in how cases were formerly filed initially in juvenile court withstood constitutional challenges that it violated the separation of powers between the executive and judicial branches of government and due process of law under the federal and state Constitutions. (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 551–573 [117 Cal.Rptr.2d 168, 41 P.3d 3] (*Manduley*).) Our Supreme Court further rejected challenges to the statutory scheme as violating equal protection. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 835–841 [16 Cal.Rptr.3d 420, 94 P.3d 551].)

■ The purpose of Proposition 57 with regard to juvenile offenders is to undo Proposition 21. The charging instrument for all juveniles must now be filed in juvenile court. Prosecutors may still move the court to transfer certain categories of cases to criminal court, but the juvenile court is vested with the sole authority to determine whether a juvenile should be transferred. Juveniles accused of felonies are guaranteed a right to a fitness hearing before being sent to the criminal division of superior court to be tried as an adult. (*Cervantes, supra*, 9 Cal.App.5th at pp. 596–597.)

*Proposition 57's Silence on Retroactivity*

Defendant contends section 602 was amended to provide exclusive jurisdiction in juvenile court, and section 707 was amended to require a fitness hearing in juvenile court as a prerequisite to transferring a case to adult court.

The People point out that in contrast to the amendments to sections 602 and 707, which are silent on the issue of retroactive application, the constitutional amendment to article I, section 32 of the California Constitution, set forth in section 3 of Proposition 57, expressly changes adult sentencing to make nonviolent adult offenders eligible for parole consideration after completing the term of his or her primary offense. (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, p. 141 (Voter Information Guide).) The People analyze various statements in the voter guide to show the juvenile provisions are meant to be prospective. The voter pamphlet refers to transfers from juvenile court to adult court that "should" occur. (*Id.*, at pp. 54, 56, 58, 141–146.) This ballot pamphlet may indicate intent for prospective application of juvenile transfer procedures but, at best, it is ambiguous. The statutory changes to sections 602 and 707 and the sections implementing them are silent on the issue of retroactivity.

■ We therefore begin our analysis with Penal Code section 3, which provides that "[n]o part of it is retroactive, unless expressly so declared." "Whether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent. When the Legislature has not made its intent on the matter clear," this section provides the default rule. (*People v. Brown* (2012) 54 Cal.4th 314, 319 [142 Cal.Rptr.3d 824, 278 P.3d 1182] (*Brown*).) Defendant concedes Proposition 57 is silent on the question of whether it applies retroactively to proceedings under the act. The analysis of Proposition 57 by the legislative analyst and the arguments for and against Proposition 57 are also silent on this question. (Voter Information Guide, *supra*, at pp. 54-57, 141–146; see *People v. Buford* (2016) 4 Cal.App.5th 886, 918–920 [209 Cal.Rptr.3d 593] (conc. opn. of Peña, J.) [analyzing silence of Prop. 47 on question of retroactivity], review granted Jan. 11, 2017, S238790.) Because the statute contains no express declaration that sections 602 and 707 apply retroactively to proceedings under the act, and there is no clearly implied intent of retroactivity in the legislative history, the default rule under Penal Code section 3 applies.

*Procedural Function of Superior Court Under Proposition 57*

Section 602 now reads: "Except as provided in Section 707, any person who is under 18 years of age when he or she violates any law of this state or of the United States or any ordinance of any city or county of this state

defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

As noted in *Cervantes*, revised section 602 does not use the term "exclusive" and assigns jurisdiction over all juvenile criminal matters to the juvenile court, explicitly subject to the exceptions in section 707. Subdivision (b) of section 707 lists 30 serious crimes that subject even the youngest juveniles for criminal prosecution under section 707, ages 14 and 15, to adult prosecution. The court in *Cervantes* concluded for crimes that qualify a juvenile offender for transfer to adult court, "subject matter jurisdiction is concurrent between the criminal division and the juvenile division." (*Cervantes, supra*, 9 Cal.App.5th at p. 598.) *Cervantes* explained under the California Constitution the juvenile and criminal court are divisions of the superior court, which has subject matter jurisdiction over all criminal, civil, and juvenile matters. (*Cervantes*, at p. 598, citing Cal. Const., art. VI, § 10.)

Thus, when reference is made to the jurisdiction of the juvenile or criminal court, the reference does not refer to subject matter jurisdiction, but to the statutory authority of the particular division of the superior court in a given case to proceed under juvenile court law or generally applicable criminal law. (*Cervantes, supra*, 9 Cal.App.5th at p. 598.) Prior to the passage of Proposition 21 in March 2000, a procedure similar to the one enacted by Proposition 57 was used to transfer juveniles from juvenile to criminal court. In *Manduley*, our Supreme Court held this procedural change did not violate any constitutional principle. The transfer procedure changed with the passage of Proposition 21 and again with the passage of Proposition 57. The superior court retained fundamental subject matter jurisdiction under either procedure.

*Punishment and the* Estrada *Rule*

Defendant cites *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] (*Estrada*) to argue retroactive application.

In *Estrada*, the court stated: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that

the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Estrada, supra,* 63 Cal.2d at p. 745.)

*Cervantes* analyzed *Estrada* and noted Estrada had escaped from the California Rehabilitation Center without force or violence when the offense required a minimum one-year additional sentence and a two-year minimum after being returned to custody before parole consideration. (*Estrada, supra,* 63 Cal.2d at p. 743; *Cervantes, supra,* 9 Cal.App.5th at p. 599.) Between the time of the escape and the time Estrada was convicted, however, the governing statutes were amended to reduce the minimum term to six months for nonviolent escape and to require no minimum period before parole consideration. (*Estrada, supra,* at pp. 743–744; *Cervantes, supra,* at p. 600.) Estrada was being held in custody solely because of the minimum terms required by the former version of the statute and would have been entitled to release under the new version. (*Estrada,* at pp. 743–744; *Cervantes,* at p. 600.)

Finding the reduction in penalty amounted to a legislative decision the prior law had been too harsh, the court held the amended statutes applied to the petitioner. " '[L]egislative mitigation of the penalty for a particular crime' called for the retroactive application of the reduced penalty, effectively establishing a rule that any law reducing the penalty for a crime was intended to apply to all nonfinal judgments. ([*Estrada, supra,* 63 Cal.2d] at p. 745; see also *People v. Conley* (2016) 63 Cal.4th 646, 656 [203 Cal.Rptr.3d 622, 373 P.3d 435] [*Estrada*'s holding 'reflects a presumption about legislative intent, rather than a constitutional command'].)" (*Cervantes, supra,* 9 Cal.App.5th at p. 600.)

Defendant argues Proposition 57 amounts to a reduction in punishment, requiring us to find the law retroactive pursuant to *Estrada.* As *Cervantes* explained, however, the change in the law is procedural in nature and does not affect punishment. As noted in *Cervantes,* the passage of Proposition 115 in 1991 gave judges in criminal trials the power to conduct voir dire instead of attorneys. (*Cervantes, supra,* 9 Cal.App.5th at p. 600.) In *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287, 288–289 [279 Cal.Rptr. 592, 807 P.2d 434] (*Tapia*), the Supreme Court held most of the new procedures, including those relating to voir dire and reciprocal discovery, were not retroactive under *Estrada.* (*Cervantes, supra,* at pp. 600–601.) *Tapia* noted Proposition 115 changed the law, and these changes fell into four categories: (1) provisions changing the legal consequences of criminal behavior to the detriment of defendants; (2) provisions addressing the conduct of trials; (3) provisions clearly benefiting defendants; and (4) a single provision codifying existing law. (*Tapia, supra,* at p. 297.) *Tapia* found categories 1 and 3 were subject to

retroactivity analysis, but the procedural change to the law affecting the conduct of trials in category 2 was not retroactively applicable but prospective in nature. (*Id.* at pp. 297–301.)

 *Cervantes* analyzed *Tapia* as follows: "*Tapia* emphasized that the retroactivity exception turns on the type of legal change effectuated by the new or amended statute: changes in direct penal consequences like the one under consideration in *Estrada*, would call for retroactive application, while those like the one involved in *Tapia* that 'address the conduct of trials which have yet to take place, rather than criminal behavior which has already taken place' are to be applied prospectively. (*Tapia*, [*supra*,] at pp. 288–289.) Under that rubric, the transfer procedure dictated by Proposition 57 is not one that addressed 'criminal behavior which has already taken place,' but is more correctly identified as one 'address[ing] the conduct of trials which have yet to take place.' (*Tapia*, at p. 288.) This suggests its application should be prospective only." (*Cervantes, supra*, 9 Cal.App.5th at pp. 600–601, fn. omitted.)

 The *Estrada* case was recently revisited by our Supreme Court in *Brown, supra*, 54 Cal.4th 314. *Cervantes* analyzed the holding in *Brown* and found the legislative change in *Brown* strongly supported prospective application. The legislative change addressed presentence conduct credits, a situation more closely linked to the length of punishment for an offense than Proposition 57. In *Brown*, the Supreme Court unanimously determined a jail inmate awaiting trial and sentencing should earn credits at the rate in effect when sentenced. (*Brown, supra*, 54 Cal.4th at pp. 317–330; *Cervantes, supra*, 9 Cal.App.5th at p. 601.) *Cervantes* noted *Brown* recognized a change in credit-earning ability would affect the length of a prisoner's time in custody and, in that sense, would have a direct effect on punishment, but nevertheless found *Estrada* was inapplicable. (*Brown, supra*, at pp. 323, 325; *Cervantes, supra*, at p. 601.)

 *Brown* held: "*Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in [Penal Code] section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." (*Brown, supra*, 54 Cal.4th at p. 324.) "The holding in *Estrada* was founded on the premise that ' "[a] legislative mitigation of the penalty *for a particular crime* represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law . . . ." ' " (*Id.* at p. 325.) In *Brown*, the court did not apply the *Estrada* rule because "a statute increasing the rate at which prisoners may earn credits for good behavior does not represent a judgment about the needs

of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent." (*Brown, supra,* at p. 325; see *Cervantes, supra,* 9 Cal.App.5th at pp. 601–602.)

■ Similarly here, *Estrada* does not control because Proposition 57's transfer of the fitness hearing procedure to juvenile court does not reduce punishment for a particular crime. *Cervantes* recognized that while Proposition 57 may have a substantive impact on time in custody in some cases, and sometimes a big impact, the transfer procedure required under the Welfare and Institutions Code "does not resemble the clear-cut reduction involved in *Estrada.*" (*Cervantes, supra,* 9 Cal.App.5th at p. 601.) *Cervantes* found that although the juvenile court rather than the district attorney makes the decision to try a juvenile offender as an adult, we may presume many cases filed in juvenile court will still end up in adult court with adult penalties under Proposition 57 after the fitness hearing is held. *Cervantes* further found that Proposition 57 "mitigates the penalty for a particular crime even less directly than the jail credits at issue in *Brown*" and found the change in the law to be more analogous to the voir dire procedure in *Tapia,* "which affected who performed a particular function in the judicial process." (*Cervantes, supra,* at pp. 601–602.) *Cervantes* concluded Proposition 57 "may or may not in some attenuated way affect punishment, but it is not a direct reduction in penalty as required for retroactivity under *Estrada.*" (*Cervantes,* at p. 602, citing *Brown, supra,* 54 Cal.4th at p. 325.)

*Cervantes* was followed by *Mendoza, supra,* 10 Cal.App.5th 327, which also held the *Estrada* rule does not apply to make Proposition 57 retroactive. Like *Cervantes, Mendoza* found Proposition 57 is distinguishable from the laws at issue applying the *Estrada* rule first because "Proposition 57 does not expressly mitigate the penalty for any particular crime." (*Mendoza, supra,* at p. 348.) Instead, it changes the procedural mechanism for transferring juvenile offenders to adult court. Citing to *Brown, Mendoza* reasoned the *Estrada* retroactivity rule is not applicable to any amendment that may reduce a punishment, but is directed to statutes representing legislative mitigation of the penalty for a specific crime. (*Mendoza,* at p. 348; *Brown, supra,* 54 Cal.4th at p. 325.)

■ *Mendoza* also found that "Proposition 57 provides no certainty that a minor will actually receive a mitigated penalty because juvenile courts have discretion under Proposition 57 to transfer juvenile cases to adult court." (*Mendoza, supra,* 10 Cal.App.5th at p. 348.) The penalty for all cases transferred to adult court "will be the same as they were before Proposition 57." (*Ibid.*)

*Mendoza* analyzed the Supreme Court's decision in *People v. Francis* (1969) 71 Cal.2d 66 [75 Cal.Rptr. 199, 450 P.2d 591] where the defendant

committed a drug offense that was later amended by the Legislature from being punished only as a felony to being punished as a wobbler. *Francis* applied the *Estrada* rule, reasoning that although the amendment did not guarantee Francis a lower sentence, making the specific crime a misdemeanor demonstrated a legislative intent that punishing the offense as a felony might be too severe in certain cases. (*People v. Francis, supra,* at p. 76; *Mendoza, supra,* 10 Cal.App.5th at p. 348.) *Mendoza* found the legislative change in *Francis* distinguishable from Proposition 57, "because it involved a legislative mitigation of the potential punishment for a specific crime. Where, as under Proposition 57, the potential benefit inures to a class of offenders based on their age rather than on the offenses they commit, the inference that voters deemed the entire Penal Code unduly severe when applied to minors is too attenuated to support application of the *Estrada* rule." (*Mendoza, supra,* 10 Cal.App.5th at pp. 348–349.)

Contrary to *Cervantes* and *Mendoza, People v. Vela* (2017) 11 Cal.App.5th 68 [218 Cal.Rptr.3d 1] (*Vela*) held that Proposition 57 has retroactive application because the intent of the voters was to broaden the number of minors who could potentially stay in the juvenile justice system where the primary emphasis is on rehabilitation rather than punishment. (*Vela, supra,* at pp. 75–76.) *Vela* found the potential for reduction in punishment of a crime in *Francis* was analogous to the potential ameliorating benefit to minors after amendments to the Welfare and Institutions Code, and it held the *Estrada* rule applied to Proposition 57. (*Vela,* at p. 81.)

We disagree with the *Vela* court's analysis of *Francis, Estrada,* and the retroactivity of Proposition 57. *Vela* expands the *Estrada* rule by finding a potential benefit inuring to a class of offender based on age rather than the offenses committed. We find persuasive the reasoning in *Mendoza* that "applying the *Estrada* rule to Proposition 57 would expand that rule in such a manner as to risk swallowing the general [Penal Code] section 3 presumption that legislation is intended to apply prospectively." (*Mendoza, supra,* 10 Cal.App.5th at p. 348, citing *Brown, supra,* 54 Cal.4th at pp. 324–325.)

■ We agree with the findings in *Cervantes* and *Mendoza* that no provision in the Welfare and Institutions Code enacted by Proposition 57 reduces any form of punishment under the Penal Code. The expressly retroactive constitutional revision in Proposition 57 applies only to adult offenders. The absence of express language making application of the Welfare and Institutions Code retroactive where the constitutional amendment is expressly retroactive demonstrates an intent by the voters to direct "the scope and manner of the Act's retroactive application." (*People v. Conley, supra,* 63 Cal.4th at p. 658.) The Welfare and Institutions Code changes in the proposition effect a procedural change similar to procedures—such as voir dire being conducted by the trial court—noted in *Tapia.*

Defendant further argues Proposition 57 creates an affirmative defense that was unavailable during his trial, and the criminal division of the superior court acted in excess of its jurisdiction because it did not afford him a proper transfer hearing upon a motion by the prosecutor as now required by amendments to the Welfare and Institutions Code. This argument assumes Proposition 57 is retroactive. We have determined it is not. Defendant's affirmative defense argument further inaccurately assumes the criminal court lacks subject matter jurisdiction over juvenile cases. As *Cervantes* explained, the juvenile and criminal courts are both divisions within the same superior court, which maintains fundamental subject matter jurisdiction over juvenile cases. Proposition 57 does not create an affirmative defense for juveniles who have already been tried in criminal court; it prospectively changes the procedural process for transferring a case to criminal court.

Due to numerous errors in Cervantes's trial, eight of 15 counts were reversed on appeal, including all counts with specific intent as an element of the offense. This included Cervantes's convictions for attempted murder, torture, aggravated mayhem, and two sex offenses. (*Cervantes, supra*, 9 Cal.App.5th at p. 579.) Because the court held the People could retry Cervantes on the reversed counts, placing him again in jeopardy, and given that Cervantes had to be resentenced even if the People elected not to retry him, the court found Cervantes was entitled on remand to a fitness hearing in juvenile court should he elect to have one. (*Id.* at p. 609.)

■ The court's remand of *Cervantes* for further proceedings, thereby entitling him to a fitness hearing, turned the revised procedure into the prospective application of Proposition 57 for that defendant. This case is procedurally distinguishable from *Cervantes*. Defendant's convictions were affirmed in his first appeal to this court. After remand for resentencing in light of *Miller*, defendant has appealed the trial court's reimposition of an LWOP sentence. We have found no error in defendant's resentencing hearing and, thus, no basis for a remand. We conclude that application of Proposition 57 to defendant is not retroactive, and he is not entitled to remand solely for a fitness hearing before the juvenile court.

*Constitutional Contentions*

Defendant contends he is entitled to remand for a transfer hearing under federal due process and the Sixth Amendment. Our Supreme Court rejected these contentions in *Manduley*. (*Manduley, supra*, 27 Cal.4th at pp. 551–573.)

In *Kent v. United States* (1966) 383 U.S. 541, 556 [16 L.Ed.2d 84, 86 S.Ct. 1045] (*Kent*), the high court considered a statutory scheme conferring original and exclusive jurisdiction on a juvenile court over minors accused of various

crimes. The law authorized the juvenile court to waive its jurisdiction and transfer the matter to criminal court after conducting an investigation, but no statutory criteria or procedures governed the juvenile court's determination to waive jurisdiction. (*Id.* at p. 547; *Manduley, supra*, 27 Cal.4th at p. 565.) *Manduley* found the decision in *Kent* held that a juvenile court violated the minor's due process of law in transferring the matter to criminal court without conducting a hearing or providing a statement of reasons for doing so. In conducting such a hearing, the minor possessed the right to effective assistance of counsel, access to the records considered by the juvenile court, and a statement of reasons for the juvenile court's decision. (*Kent, supra*, at pp. 553–563; *Manduley, supra*, 27 Cal.4th at p. 565.)

■ In distinguishing the statute at issue in *Kent*, our Supreme Court in *Manduley* explained that California's juvenile law does not confer upon the juvenile court original and exclusive jurisdiction over minors accused of crimes under the circumstances set forth in section 707. Under this statute, "neither the juvenile court nor the criminal court renders a decision whether the minor is fit for a juvenile court disposition." (*Manduley, supra*, 27 Cal.4th at p. 565.) "Rather, as we have explained, the prosecutor's charging decision determines which court shall hear the matter." (*Ibid.*) *Manduley* rejected the petitioners' argument the procedural protections applicable to juvenile fitness hearings are mandated by *Kent* to apply also to the prosecutor's exercise of discretion to directly file charges in criminal court. *Manduley* distinguished prosecutorial discretion from judicial determinations. (*Manduley, supra*, 27 Cal.4th at pp. 565–566.) ■ "*Kent, supra*, 383 U.S. 541, held only that where a statute confers a right to a *judicial* determination of fitness for a juvenile court disposition, the due process clause requires that the determination be made in compliance with the basic procedural protections afforded to similar judicial determinations. A statute that authorizes discretionary direct filing in criminal court by the prosecutor, on the other hand, does not require similar procedural protections, because it does not involve a judicial determination but rather constitutes an executive charging function, which does not implicate the right to procedural due process and a hearing." (*Manduley, supra*, 27 Cal.4th at p. 566.)

■ *Manduley* concluded the petitioners did not possess any right to be subject to the jurisdiction of the juvenile court, and the legislative branch could properly delegate to the prosecutor the discretion to determine where to file charges against a minor, including directly with the criminal court.[3] (*Manduley, supra*, 27 Cal.4th at p. 567.) The decisions of our Supreme Court

---

[3] *Manduley* further rejected the petitioners' challenge to direct filing on equal protection grounds. (*Manduley, supra*, 27 Cal.4th at pp. 567–572.)

are binding. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) We therefore reject defendant's constitutional arguments.

## DISPOSITION

The judgment is affirmed.

Gomes, Acting P. J., and Poochigian, J., concurred.

Appellant's petition for review by the Supreme Court was granted July 26, 2017, S242660. Kruger, J., did not participate therein.