HILL, P.J.
*1276 INTRODUCTION
An information filed in the Merced County Superior Court charged Ryan Osmen Suarez with the murder of John Cordero. ( Pen. Code, § 187, subd. (a).) The information further alleged Suarez (1) personally and intentionally discharged a firearm causing great bodily injury or death (id ., § 12022.53, subd. (d)); (2) personally used a firearm (id ., § 12022.5) within the meaning of Welfare and Institutions Code [1] section 707, subdivision (d)(2)(B) ; and (3) committed the offense for the benefit of, or in association with, a criminal street gang ( Pen. Code, § 186.22, subd. (b) ). Although Suarez committed the offense when he was 15 years old, he was tried as an adult in criminal court. The victim was 15 years old as well.
A jury convicted Suarez of first degree murder and found the enhancement allegations true. The court sentenced Suarez to an aggregate, unstayed term of 50 years to life in state prison. Suarez now appeals his conviction and sentence, making a series of arguments.
Suarez claims the evidence was insufficient for a reasonable jury to find the elements of deliberation and premeditation, required for a conviction of first degree murder, were proven beyond a reasonable doubt, thereby necessitating *451 modification of the judgment to reflect a conviction of second degree murder. He next contends the trial court was required, sua sponte, to instruct the jury on subjective provocation, and, in the alternative, that trial counsel was ineffective for failing to request such an instruction. He also argues that the standard instruction on heat of passion manslaughter given by the trial court *1277 was both erroneous and prejudicial to the extent it precluded the jury from considering Suarez's young age in evaluating the adequacy of any provocation; he further argues, in the alternative, that counsel was ineffective in failing to request a modification of the standard instruction to include consideration of his youth. Suarez next contends the court abused its discretion in admitting evidence of gang membership that was irrelevant, more prejudicial than probative, and cumulative under Evidence Code section 352, and that constituted impermissible propensity evidence under Evidence Code section 1101, subdivision (a). Suarez also makes a claim of cumulative error, which he argues requires reversal of his conviction. As to his sentence, Suarez contends it constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution, as interpreted by Miller v. Alabama (2012) 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 ( Miller ).
In the unpublished portion of this opinion, we reject each of these contentions. We conclude, however, that in light of his Eighth Amendment argument, Suarez is entitled to a limited remand of the matter pursuant to People v. Franklin (2016) 63 Cal.4th 261, 202 Cal.Rptr.3d 496, 370 P.3d 1053 ( Franklin ), to augment the sentencing record. In Franklin , our Supreme Court found the defendant's Eighth Amendment argument was moot in light of newly enacted Penal Code section 3051, which requires that defendants in Suarez's position receive a youth offender parole hearing before the Board of Parole Hearings during their 25th year of incarceration. Franklin provides for a limited remand to permit a defendant in this position to prepare an adequate record, under new procedures announced in Franklin , for the eventual youth offender parole hearing. ( Franklin, at pp. 269, 284, 202 Cal.Rptr.3d 496, 370 P.3d 1053 ; People v. Perez (2016) 3 Cal.App.5th 612, 619, 208 Cal.Rptr.3d 34 ( Perez ).) We further conclude Suarez is entitled, upon remand, to have the trial court exercise its discretion whether to strike the firearm enhancements.
While this appeal was pending, the electorate passed Proposition 57, the Public Safety and Rehabilitation Act of 2016 (Proposition 57 or the Act), in the general election held on November 8, 2016.[2] The parties filed supplemental briefs on the issue whether Proposition 57 is retroactively applicable to this case. As we explain in the published portion of this opinion, we conclude it is not. Accordingly, Suarez is not entitled to a conditional reversal and remand for a fitness/transfer hearing in juvenile court, and failure to afford him such a remand does not violate equal protection.
*1278 FACTS**
DISCUSSION
I.-VII.***
*452 VIII. Proposition 57
Suarez contends the Act applies retroactively to cases, such as his, that were filed directly in criminal (adult) court but that are not yet final. His claim is based, in large part, on the California Supreme Court's holding in In re Estrada (1965) 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 ( Estrada ) and its reasoning in Franklin , supra , 63 Cal.4th 261, 202 Cal.Rptr.3d 496, 370 P.3d 1053. He also says failure to remand his case for a fitness hearing conducted under the provisions of Proposition 57 would deprive him of equal protection and be prejudicial.
Procedural Background and Proposition 57
Historically, before a minor could be tried in criminal (adult) court, California required a finding the minor was unfit to be dealt with under the juvenile court law. (See, e.g., Juan G. v. Superior Court (2012) 209 Cal.App.4th 1480, 1493, 147 Cal.Rptr.3d 816 ( Juan G. ); People v. Cardona (2009) 177 Cal.App.4th 516, 524, 99 Cal.Rptr.3d 313.) Although, prior to 1999, there was no provision for the direct filing (mandatory or discretionary) of charges against juveniles in criminal court ( Juan G. , at p. 1493, 147 Cal.Rptr.3d 816 ), a presumption of unfitness for minors, aged 16 years old or older and charged with specified offenses, was added to the Welfare and Institutions Code in 1979, and extended, in 1994, to minors between the ages of 14 and 16 who were alleged to have committed certain forms of murder ( People v. Superior Court (Jones) (1998) 18 Cal.4th 667, 680-681, fn. 1, 76 Cal.Rptr.2d 641, 958 P.2d 393 ).
In 1999, the Legislature added subdivision (b) to section 602, mandating the direct filing in adult court of criminal cases against minors 16 years of age or older under specified circumstances. ( Juan G. , supra , 209 Cal.App.4th at p. 1493, 147 Cal.Rptr.3d 816.) In 2000, voters approved Proposition 21, the Gang *1279 Violence and Juvenile Crime Prevention Act of 1998. In pertinent part, it "confer[red] on prosecutors the discretion to bring specified charges against certain minors directly in criminal court, without a prior adjudication by the juvenile court that the minor [was] unfit for a disposition under the juvenile court law." ( Manduley v. Superior Court (2002) 27 Cal.4th 537, 545, 117 Cal.Rptr.2d 168, 41 P.3d 3 ( Manduley ); see generally id . at pp. 548-550, 117 Cal.Rptr.2d 168, 41 P.3d 3.) Proposition 21 also decreased, to 14, the minimum age for mandatory criminal prosecutions. ( Manduley , at p. 550, 117 Cal.Rptr.2d 168, 41 P.3d 3.)
John Cordero was killed on June 23, 2013. Suarez was born June 7, 1998, making him 15 years old at the time of the crime of which he was convicted. He was charged directly in criminal court, convicted on July 16, 2014, and sentenced on September 26, 2014. His notice of appeal was filed on or about September 30, 2014.
On November 8, 2016, while Suarez's appeal was pending, voters enacted Proposition 57. It went into effect the next day. ( Cal. Const., art. II, § 10, subd. (a).) Insofar as we are concerned, the Act eliminated the People's ability to initiate criminal cases against juvenile offenders anywhere but in juvenile court. It also removed the presumption of unfitness that attached to the alleged commission of certain offenses.[14]
The purpose of the portions of Proposition 57 that deal with juvenile offenders is *453 to undo Proposition 21. (See generally People v. Marquez (2017) 11 Cal.App.5th 816, 821, 217 Cal.Rptr.3d 814, review granted July 26, 2017, S242660 ( Marquez ).) The Act's stated purposes, contained in uncodified section 2 thereof, are to "[p]rotect and enhance public safety"; "[s]ave money by reducing wasteful spending on prison"; "[p]revent federal courts from indiscriminately releasing prisoners"; "[s]top the revolving door of crime by emphasizing rehabilitation, especially for juveniles"; and [r]equire *1280 a judge, not a prosecutor, to decide whether juveniles should be tried in adult court." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 2, p. 141.)[15]
Analysis
There can be no doubt that, had Suarez committed his offense after Proposition 57 went into effect, he would have been entitled to a fitness hearing-with no presumption of unfitness-before his case could be transferred to criminal (adult) court for prosecution. The question we confront is whether Proposition 57 applies to juvenile offenders who, like Suarez, were charged, tried, convicted, and sentenced before the Act's effective date, but whose cases are not yet final on appeal. (See People v. Covarrubias (2016) 1 Cal.5th 838, 935, 207 Cal.Rptr.3d 228, 378 P.3d 615 [for purpose of determining retroactive application of amendment to criminal statute, judgment is not final until time for petitioning for writ of certiorari in United States Supreme Court has passed].)[16] This is a purely legal question we analyze de novo. (See People v. Arroyo (2016) 62 Cal.4th 589, 593, 197 Cal.Rptr.3d 122, 364 P.3d 168 ( Arroyo ).)[17]
*454 Suarez says Proposition 57 applies retroactively to direct file cases that are not yet final. We disagree.
In ascertaining whether a statute should be applied retroactively, the intent of the electorate, or the Legislature, "is the 'paramount' consideration." ( People v. Nasalga (1996) 12 Cal.4th 784, 792, 50 Cal.Rptr.2d 88, 910 P.2d 1380 (plur. opn. of Werdegar, J.); see People v. Conley (2016) 63 Cal.4th 646, 656, 203 Cal.Rptr.3d 622, 373 P.3d 435.) " ' "In interpreting a voter initiative" ' such as Proposition [57], ' "we apply the same principles that govern statutory construction. [Citation.] Thus, [1] 'we turn first to the language of the statute, giving the words their ordinary meaning.' [Citation.]
*1281 [2] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] [3] When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." ' [Citation.] 'In other words, our "task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent." ' [Citation.]" ( Arroyo , supra , 62 Cal.4th at p. 593, 197 Cal.Rptr.3d 122, 364 P.3d 168.)
"It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise. [Citations.]" ( Tapia , supra , 53 Cal.3d at p. 287, 279 Cal.Rptr. 592, 807 P.2d 434.) While the Welfare and Institutions Code does not contain a statutory codification of this principle (cf., e.g., Code Civ. Proc., § 3, Pen. Code, § 3 ), the California Supreme Court has made clear such statutory language " 'does no more than codify a general rule of construction, applicable as well to statutes containing no such provision. [Citations.]' [Citation.]" ( Stenger v. Anderson (1967) 66 Cal.2d 970, 977, fn. 13, 59 Cal.Rptr. 844, 429 P.2d 164.)
The provisions of Proposition 57 affecting only juvenile offenders contain no express statement regarding retroactivity. Suarez seeks support for his claim of retroactive application in the Act's purportedly ameliorative stated purpose and intent, set out ante ; uncodified section 5 of the Act, which says the Act "shall be broadly construed to accomplish its purposes" (Voter Information Guide, Gen. Elec., supra , text of Prop. 57, § 5, p. 145); and uncodified section 9 of the Act, which says the Act "shall be liberally construed to effectuate its purposes" (Voter Information Guide, Gen. Elec., supra , text of Prop. 57, § 9, p. 146). Our Supreme Court, however, has "been cautious not to infer the voters' or the Legislature's intent on the subject of prospective versus retrospective operation from 'vague phrases' [citation] and 'broad, general language' [citation] in statutes, initiative measures and ballot pamphlets." ( Californians For Disability Rights v. Mervyn's, LLC (2006) 39 Cal.4th 223, 229-230, 46 Cal.Rptr.3d 57, 138 P.3d 207.) "Accordingly, we will not attempt to infer from the ambiguous general language of Proposition [57] whether the voters intended the measure to apply to ... cases [that are not yet final]. Instead we will employ the ordinary presumptions and rules of statutory construction commonly used to decide such matters when a statute is silent." ( Id . at p. 230, 46 Cal.Rptr.3d 57, 138 P.3d 207.)
" '[A] statute that is ambiguous with respect to retroactive application is construed ... to be unambiguously prospective. [Citations.]' " ( Myers v. Philip Morris Companies, Inc. (2002) 28 Cal.4th 828, 841, 123 Cal.Rptr.2d 40, 50 P.3d 751, quoting, inter alia, *455 I.N.S. v. St. Cyr (2001) 533 U.S. 289, 320-321, fn. 45, 121 S.Ct. 2271, 150 L.Ed.2d 347.) Suarez argues, however, *1282 that Proposition 57 falls within the exception to this general principle carved out by Estrada , supra , 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948.
Estrada dealt with a situation in which, at the time of the petitioner's offense (escape without force or violence), the applicable statutes mandated a sentence of at least one year's imprisonment, to commence from the time the prisoner would have been discharged otherwise, with no grant of parole until service of at least two calendar years from the date of the escapee's return to prison after conviction. After the petitioner committed the crime, but before his conviction and sentence, the statutes were amended to provide for a sentence of six months to five years in prison, with no minimum date for parole eligibility. ( Estrada , supra , 63 Cal.2d at pp. 743-744, 48 Cal.Rptr. 172, 408 P.2d 948.)[18] The California Supreme Court stated:
"The problem, of course, is one of trying to ascertain the legislative intent-did the Legislature intend the old or new statute to apply? Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional. It has not done so. We must, therefore, attempt to determine the legislative intent from other factors.
"There is one consideration of paramount importance. It leads inevitably to the conclusion that the Legislature must have intended, and by necessary implication, provided, that the amendatory statute should prevail. When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." ( Estrada , supra , 63 Cal.2d at pp. 744-745, 48 Cal.Rptr. 172, 408 P.2d 948.)
With respect to Penal Code section 3, the court stated: "That section simply embodies the general rule of construction, coming to us from the common law, that when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate *1283 prospectively and not retroactively. That rule of construction, however, is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent. In the instant case there are ... other factors that indicate the Legislature *456 must have intended that the amendatory statute should operate in all cases not reduced to final judgment at the time of its passage." ( Estrada , supra , 63 Cal.2d at p. 746, 48 Cal.Rptr. 172, 408 P.2d 948.)
We conclude Estrada does not require that the provisions of Proposition 57 be applied retroactively to Suarez's case. Although Estrada has been broadly applied in the past (see, e.g., People v. Francis (1969) 71 Cal.2d 66, 75-76, 75 Cal.Rptr. 199, 450 P.2d 591 ( Francis ) [applying Estrada to statutory amendment vesting in trial court discretion to impose either same penalty as under former law or lesser penalty] ), the California Supreme Court has since made it clear Estrada "supports an important, contextually specific qualification to the ordinary presumption that statutes operate prospectively: When the Legislature has amended a statute to reduce the punishment for a particular criminal offense , we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date. [Citation.]" ( People v. Brown (2012) 54 Cal.4th 314, 323, 142 Cal.Rptr.3d 824, 278 P.3d 1182, italics added, fn. omitted ( Brown ).)
The state's high court noted the "limited role Estrada properly plays in our jurisprudence of prospective versus retrospective operation" ( Brown , supra , 54 Cal.4th at p. 324, 142 Cal.Rptr.3d 824, 278 P.3d 1182 ), and found Estrada 's statement about the rule of construction codified in Penal Code section 3 not being a "straitjacket" ( Estrada , supra , 63 Cal.2d at p. 746, 48 Cal.Rptr. 172, 408 P.2d 948 ), if applied broadly and literally, would "endanger the default rule of prospective operation" ( Brown , at p. 324, 142 Cal.Rptr.3d 824, 278 P.3d 1182 ). The court concluded: " Estrada is today properly understood, not as weakening or modifying the default rule of prospective operation codified in [Penal Code] section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments. [Citation.]" ( Id . at p. 324, 142 Cal.Rptr.3d 824, 278 P.3d 1182, italics added.) The court rejected the argument Estrada should be understood to apply to any statute that reduces punishment in any manner, noting "the rule and logic of Estrada is specifically directed to a statute that represents ' "a legislative mitigation of the penalty for a particular crime " ' [citation]." ( Brown , at p. 325, 142 Cal.Rptr.3d 824, 278 P.3d 1182, original italics.)
Brown concerned the application of a change in the rate at which prisoners in local custody could earn conduct credits ( *1284 Brown , supra , 54 Cal.4th at pp. 317-318, 142 Cal.Rptr.3d 824, 278 P.3d 1182 ), a very different situation than we confront here. Nevertheless, we cannot just blithely write off, on that ground, a pronouncement by our state's highest court that limits the holding in one of that court's prior cases. That the state Supreme Court did not intend this limitation to apply only in the circumstances presented in Brown is clearly demonstrated by the fact it cited to a discussion of the default rule of prospective application, and rejection of a broad interpretation of Estrada , contained in Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1207-1209, 246 Cal.Rptr. 629, 753 P.2d 585, a civil case. ( Brown , at pp. 324-325, 142 Cal.Rptr.3d 824, 278 P.3d 1182.) The Supreme Court's application of the limitation on Estrada in two such disparate scenarios strongly signals its intent that said limitation should be broadly applied. This is especially so when we take into account that court's more recent reference to Brown as "acknowledging the continuing viability of the Estrada rule, *457 [but] emphasiz[ing] its narrowness." ( People v. Hajek and Vo (2014) 58 Cal.4th 1144, 1196, 171 Cal.Rptr.3d 234, 324 P.3d 88, disapproved on another ground in People v. Rangel (2016) 62 Cal.4th 1192, 1216, 200 Cal.Rptr.3d 265, 367 P.3d 649.)
We recognize significant differences exist between juvenile and adult offender laws, and that "[t]he former seeks to rehabilitate, while the latter seeks to punish." ( In re Julian R. (2009) 47 Cal.4th 487, 496, 97 Cal.Rptr.3d 790, 213 P.3d 125.) We also recognize "the certification of a juvenile offender to an adult court has been ... characterized as 'the worst punishment the juvenile system is empowered to inflict.' [Citation.]" ( Ramona R. v. Superior Court (1985) 37 Cal.3d 802, 810, 210 Cal.Rptr. 204, 693 P.2d 789.) Proposition 57 has the potential to reduce the range of permissible punishment-including that applicable to the offense of which Suarez was convicted-for a class of offenders. Nevertheless, no provision of Proposition 57 mitigates the penalty for a particular criminal offense. Accordingly, Estrada does not overcome the strong presumption of prospective-only application.[19]
As previously noted, the portions of Proposition 57 applicable only to juvenile offenders contain no express retroactivity provision. By contrast, the Act expressly renders the provisions relating to eligibility for parole consideration retroactive by making them applicable to "[a]ny person convicted ... and sentenced." ( Cal. Const., art. I, § 32, subd. (a)(1); see Franklin , supra , 63 Cal.4th at p. 278, 202 Cal.Rptr.3d 496, 370 P.3d 1053 [discussing retroactivity of youth offender parole hearings *1285 under Pen. Code, § 3051 ].) Additionally, section 707, subdivision (a)(1), as amended by the Act, mandates that any motion to transfer the minor from juvenile court to criminal court "must be made prior to the attachment of jeopardy ." (Italics added.)
"The voters are presumed to have been aware of existing law at the time an initiative was enacted. [Citations.]" ( Juan G. , supra , 209 Cal.App.4th at p. 1494, 147 Cal.Rptr.3d 816.) We generally also assume voters considered the entire text of a proposal submitted to them for enactment. (See People v. Valencia (2017) 3 Cal.5th 347, 369, 220 Cal.Rptr.3d 230, 397 P.3d 936.) This being the case, logic dictates that had voters intended the juvenile offender provisions of Proposition 57 to apply to such offenders who were already tried, convicted, and sentenced, the enactment would have included an express provision to that effect, as do the parole eligibility portions of the Act.
When interpreting a legislative enactment, " '[w]e must ... avoid a construction that would produce absurd consequences, which we presume the Legislature [or voters] did not intend. [Citations.]' [Citation.]" ( In re Greg F. (2012) 55 Cal.4th 393, 406, 146 Cal.Rptr.3d 272, 283 P.3d 1160 ; see People v. Union Pacific Railroad Co. (2006) 141 Cal.App.4th 1228, 1257, fn. 5, 47 Cal.Rptr.3d 92.) To hold Proposition 57 applies retroactively to defendants who have been convicted and sentenced, but whose judgments are not yet final, would *458 mean an offender who was tried and convicted by a jury of special circumstance murder upon proof beyond a reasonable doubt, and sentenced to life without the possibility of parole by a court that carefully considered whether to impose a lesser term of 25 years to life as permitted by Penal Code section 190.5, subdivision (b), would be given the opportunity of being released within a matter of a few years (see, e.g. §§ 607, 1769, 1771). This is so even though the life-without-parole sentence comported with the Eighth Amendment to the United States Constitution, as construed in Miller , supra , 567 U.S. 460, 132 S.Ct. 2455 and Montgomery v. Louisiana (2016) 577 U.S. ----, 136 S.Ct. 718, 193 L.Ed.2d 599 ( Montgomery ). It is difficult to imagine a more absurd result, or that voters intended for such an offender to be returned to society within such a short time.
Suarez argues, however, that the California Supreme Court's decision in Franklin , supra , 63 Cal.4th 261, 202 Cal.Rptr.3d 496, 370 P.3d 1053, demonstrates Proposition 57 should be applied retroactively. We disagree.
In Franklin , the California Supreme Court determined Penal Code section 3051, the youth offender parole statute, applies retroactively. ( Franklin , supra , 63 Cal.4th at p. 278, 202 Cal.Rptr.3d 496, 370 P.3d 1053.) The court reasoned: "The statutory text makes clear that the Legislature intended youth offender parole hearings to apply retrospectively, that is, to all eligible youth offenders regardless of the date of *1286 conviction. [Penal Code s]ection 3051, subdivision (b) makes eligible all persons 'convicted of a controlling offense that was committed before the person had attained 23 years of age.' In addition, [Penal Code] section 3051, subdivision (i) says: 'The board shall complete all youth offender parole hearings for individuals who became entitled to have their parole suitability considered at a youth offender parole hearing on the effective date of [this section] by July 1, 2015.' This provision would be meaningless if the statute did not apply to juvenile offenders already sentenced at the time of enactment." ( Ibid . )
The provisions of the Act that apply to juveniles make no reference to persons already convicted or sentenced. To the contrary, while section 602, as amended by Proposition 57, places "any" juvenile offender within the jurisdiction of the juvenile court except as provided in section 707, section 707, subdivision (a)(1), as amended, does not permit a motion to transfer the juvenile to criminal court to be made at any time, but rather mandates it be made before jeopardy attaches. The clear and only reasonable implication is that the resulting fitness hearing must also take place before such time. Jeopardy manifestly attaches prior to conviction and sentencing.
Moreover, as Franklin observes, the Legislature enacted Penal Code section 3051 and related provisions "explicitly to bring juvenile sentencing into conformity with" the Miller line of precedents. ( Franklin , supra , 63 Cal.4th at p. 277, 202 Cal.Rptr.3d 496, 370 P.3d 1053.) Miller itself is fully retroactive. ( Montgomery , supra , 577 U.S. at pp. ---------, 136 S.Ct. at pp. 733-734.) Even if we assume, as Suarez argues, "[c]hildren are different, and Proposition 57 is one of many new laws intended to recognize that juveniles are less culpable and have a greater potential for reform than their adult counterparts," this does not mean it should be applied retroactively. Miller , Montgomery , and their predecessor United States Supreme Court opinions simply do not speak to the subject of the court system in which a juvenile is to be tried.
*459 In terms of the intent of the legislative body enacting the law, there is a significant difference between affording an opportunity for parole after 15 or more years of incarceration ( Pen. Code, § 3051, subd. (b) ), with no additional resentencing procedure required ( Franklin , supra , 63 Cal.4th at pp. 278-279, 202 Cal.Rptr.3d 496, 370 P.3d 1053 ), and essentially returning to square one an offender who has already been tried, convicted, and sentenced, and having the potential that offender's release will be required in fewer than 10 years.
In short, Franklin does not assist Suarez.
Suarez also argues that denying him the benefit of Proposition 57 would violate equal protection. We conclude his claim lacks merit.
*1287 " ' "The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' " [Citation.] 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" ( Cooley v. Superior Court (2002) 29 Cal.4th 228, 253, 127 Cal.Rptr.2d 177, 57 P.3d 654 ; see People v. Wutzke (2002) 28 Cal.4th 923, 943-944, 123 Cal.Rptr.2d 447, 51 P.3d 310.)
We are not convinced someone like Suarez, who was tried, convicted, and sentenced before the Act went into effect, is similarly situated, for purposes of the law, as someone not yet charged (or at least not yet tried) at that time. " '[T]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.' [Citation.]" ( People v. Floyd (2003) 31 Cal.4th 179, 191, 1 Cal.Rptr.3d 885, 72 P.3d 820 ( Floyd ); see Estrada , supra , 63 Cal.2d at p. 744, 48 Cal.Rptr. 172, 408 P.2d 948 [Legislature's determination whether old or new statute should apply, "either way, would [be] legal and constitutional"].)
Were we to find Suarez is indeed similarly situated to those not yet tried when the Act went into effect, we would conclude the classification " 'is "rationally related to a legitimate governmental purpose." ' [Citation.] 'A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced should be treated alike." ' [Citation.]" ( In re Spencer S. (2009) 176 Cal.App.4th 1315, 1325, 98 Cal.Rptr.3d 477.)
Use of the rational basis test is appropriate "[w]here ... a disputed statutory disparity implicates no suspect class or fundamental right." ( Johnson v. Department of Justice (2015) 60 Cal.4th 871, 881, 183 Cal.Rptr.3d 96, 341 P.3d 1075 ( Johnson ).) Suarez argues that "[t]he constitutionality of the restraint on [Suarez's] liberty must ... pass the test of strict scrutiny." (See generally In re Olivas (1976) 17 Cal.3d 236, 251, 131 Cal.Rptr. 55, 551 P.2d 375 ; Mendoza , supra , 10 Cal.App.5th at pp. 350-351, 216 Cal.Rptr.3d 361, rev.gr.)
Suarez's restraint is not unconstitutional. His prosecution, conviction, and sentencing in criminal court were proper under the laws in place when those events occurred. (See Manduley , supra , 27 Cal.4th at pp. 567-569, 117 Cal.Rptr.2d 168, 41 P.3d 3.) He had no constitutional *460 right to be adjudicated in the juvenile court system or to be *1288 presumed fit to remain in that system. ( Hicks v. Superior Court (1995) 36 Cal.App.4th 1649, 1658, 43 Cal.Rptr.2d 269.) Finally, to the extent Suarez claims "the question involves the possible retroactive application of a more beneficial sentencing scheme, [he] has no fundamental liberty interest at stake." ( People v. Lynch (2012) 209 Cal.App.4th 353, 359, 146 Cal.Rptr.3d 811.)
In enacting Proposition 57, voters reasonably could have concluded that applying the Act prospectively was rationally related to the legitimate governmental purpose of " 'assur[ing] that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment was written.' [Citations.]" ( Floyd , supra , 31 Cal.4th at p. 188, 1 Cal.Rptr.3d 885, 72 P.3d 820.) The fact penal laws might not maintain their complete deterrent effect in all cases should (as seems likely) Proposition 57 apply to juvenile offenders who committed their crimes before, but were not yet tried when, the Act went into effect, is immaterial. " '[W]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the [voters] seem[ ] to have made.' [Citation.] 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends" ' [citations], or 'because it may be "to some extent both underinclusive and overinclusive" ' [citations]." ( Johnson , supra , 60 Cal.4th at p. 887, 183 Cal.Rptr.3d 96, 341 P.3d 1075.)
We find no equal protection violation. Accordingly, we need not address Suarez's claim that the purported equal protection violation occasioned by depriving him of a fitness hearing pursuant to Proposition 57 would be prejudicial, nor need we determine the appropriate standard of prejudice. We note, however, that "[w]hether or not the [electorate] intended the [enactment] to be retroactive to cases not final before the effective date [thereof] obviously cannot be decided on the basis of the particular facts of this or any other individual case." ( Francis , supra , 71 Cal.2d at pp. 76-77, 75 Cal.Rptr. 199, 450 P.2d 591.)
IX. Senate Bill No. 620†
DISPOSITION
The judgment is affirmed. The matter is remanded to the trial court, at such time as remittitur issues, for the limited purposes of (1) allowing both parties to make an accurate record of Suarez's characteristics and circumstances at the time of the offense, that will be relevant to the parole authority as it fulfills its statutory obligations under Penal Code sections 3051 and *1289 4801, subdivision c) ; (2) exercising its discretion under Penal Code sections 12022.5, subdivision (c) and 12022.53, subdivision (h), as amended by Statutes 2017-2018, chapter 682, Senate Bill No. 620, effective January 1, 2018; and (3) if appropriate following exercise of that discretion, resentencing Suarez accordingly.
I CONCUR:
BLACK, J.††

Unless otherwise specified, references to this enactment are to those portions of the Act applicable only to juvenile offenders.

See footnote *, ante.

See footnote *, ante.

Section 602 now states: "Except as provided in Section 707, any person who is under 18 years of age when he or she violates any law of this state ..., is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."
Section 707 now provides, in pertinent part: "(a)(1) In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any felony criminal statute, ... the district attorney ... may make a motion to transfer the minor from juvenile court to a court of criminal jurisdiction. The motion must be made prior to the attachment of jeopardy. Upon such motion, the juvenile court shall order the probation officer to submit a report on the behavioral patterns and social history of the minor.... [¶] (2) Following submission and consideration of the report, and of any other relevant evidence that the petitioner or the minor may wish to submit, the juvenile court shall decide whether the minor should be transferred to a court of criminal jurisdiction. In making its decision, the court shall consider [certain specified] criteria...." Subdivision (b) of section 707 extends subdivision (a) of the statute to any minor who allegedly committed a specified offense when he or she was 14 or 15 years of age. Murder is one such offense. (§ 707, subd. (b)(1).)

The Voter Information Guide is available at < http://www.sos.ca.gov/elections/voting-resources/voter-information-guides/> [as of Dec. 4, 2017].

We are not here faced with, and express no opinion concerning, the situation of a minor who was charged in adult court but not yet tried at the time the Act went into effect. (See People v. Superior Court (Lara)(2017) 9 Cal.App.5th 753, 758, 773-778, 215 Cal.Rptr.3d 456, review granted May 17, 2017, S241231; see also Tapia v. Superior Court(1991) 53 Cal.3d 282, 288, 279 Cal.Rptr. 592, 807 P.2d 434 (Tapia ).)

This question is pending review before the state Supreme Court in numerous cases, including People v. Superior Court (Walker)(2017) 12 Cal.App.5th 687, 220 Cal.Rptr.3d 1, review granted September 13, 2017, S243072; Marquez, supra, 11 Cal.App.5th 816, 217 Cal.Rptr.3d 814, rev.gr.; People v. Vela(2017) 11 Cal.App.5th 68, 218 Cal.Rptr.3d 1, review granted July 12, 2017, S242298; People v. Mendoza(2017) 10 Cal.App.5th 327, 216 Cal.Rptr.3d 361, review granted July 12, 2017, S241647 (Mendoza ); and People v. Cervantes(2017) 9 Cal.App.5th 569, 215 Cal.Rptr.3d 174, review granted May 17, 2017, S241323.

"Although parole constitutes a distinct phase from the underlying prison sentence, a period of parole following a prison term has generally been acknowledged as a form of punishment." (People v. Nuckles(2013) 56 Cal.4th 601, 609, 155 Cal.Rptr.3d 374, 298 P.3d 867.)

In Tapia, supra, 53 Cal.3d 282, 279 Cal.Rptr. 592, 807 P.2d 434, the California Supreme Court addressed application of the provisions of Proposition 115. In pertinent part, it held that provisions adding intent requirements to certain special circumstances permissibly could be applied to trials of crimes committed before the proposition's operative date, because, although they changed the legal consequences of a defendant's criminal conduct, they did so in a way that benefited defendants. (Tapia, at pp. 300-301, 279 Cal.Rptr. 592, 807 P.2d 434.) The Tapia opinion says nothing about application of the new provisions to cases in which trial was already held.

See footnote *, ante.

Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.