Filed 5/24/21

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>DAVID J. VALENCIA,<br><br>    Defendant and Appellant. | F078964<br><br>(Super. Ct. No. CRF30714)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County. James A. Boscoe, Judge.

Three Strikes Project, Michael S. Romano and Susan Champion for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Michael P. Farrell, Assistant Attorney General, Eric L. Chistoffersen and Ivan P. Marrs, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Appellant David J. Valencia appeals from the court's denial of his second petition for recall of sentence pursuant to the Three Strikes Reform Act of 2012. (Pen. Code,[1] § 1170.126.) The court denied the petition on the grounds it was successive and untimely. On appeal, appellant contends his rehabilitative progress in prison constitutes good cause to permit the untimely and successive petition.

We conclude we need not resolve whether the Three Strikes Reform Act permits an inmate to file successive recall petitions because, even assuming it does, an inmate's rehabilitative progress does not constitute good cause to excuse an untimely filing. We therefore conclude the court properly denied appellant's petition, and we affirm the judgment.

# FACTUAL AND PROCEDURAL BACKGROUND

"[Appellant] has a lengthy criminal record. In 1995, he was convicted of kidnapping. (§ 207, subd. (a).) In 1996, he was convicted of making criminal threats (§ 422), resisting arrest by threat or violence (§ 69), and driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)). In 2000, he was convicted of corporal injury to a spouse or cohabitant. (Pen. Code, § 273.5.) In addition, between 1987 and 2007, he was convicted of 12 misdemeanors. Finally, in 2009, [appellant] struck his wife during an argument over whether she should drive while drunk, causing a laceration on her head that was closed with staples. He was convicted a second time of corporal injury to a spouse or cohabitant (§ 273.5), which qualified as a third strike offense, and he was sentenced to an indeterminate term of 25 years to life." (*People v. Valencia* (2017) 3 Cal.5th 347, 352 (*Valencia*).)

"In 2012, the California electorate approved Proposition 36 and enacted the [Three Strikes Reform Act], which included the addition of section 1170.126 to the Penal Code." (*People v. Drew* (2017) 16 Cal.App.5th 253, 256 (*Drew*).) Relevant here, the Three Strikes Reform Act (hereinafter sometimes referred to as "the Act" or Proposition 36)

---

[1] Undesignated statutory references are to the Penal Code.

2.

created a "retroactive relief procedure" for certain inmates serving an indeterminate sentence pursuant to the former Three Strikes law to request resentencing by filing a petition for recall of sentence within two years of the date of the act " 'or at a later date upon a showing of good cause.' " (*Drew*, at p. 256; see § 1170.126, subd. (b).)

In 2013, appellant filed a petition for recall of sentence pursuant to the Act. (*Valencia*, *supra*, 3 Cal.5th at p. 352.) The trial court denied the petition on the ground appellant presented an unreasonable risk of danger to public safety. (*Ibid*.) Appellant appealed and, while his appeal was pending, the California electorate approved Proposition 47, the Safe Neighborhoods and Schools Act (codified at § 1170.18). Appellant argued the more restrictive definition of "unreasonable risk of danger to public safety" contained in Proposition 47 applied to the same language in Proposition 36. (See *Valencia*, at pp. 352-353.) This court ruled that the definition in Proposition 47 did not apply to appellant's case and affirmed the judgment. (*Valencia*, at p. 353.) Our Supreme Court granted review and affirmed that the definition contained in Proposition 47 does not apply to resentencing proceedings under Proposition 36. (*Valencia*, at pp. 352, 373-375, 377.)

The two-year window for petitioning for recall of sentence pursuant to the Act closed in November 2014, while appellant's first appeal was pending. (§ 1170.126, subd. (b).) Nevertheless, in December 2017, appellant filed a second petition to recall his sentence, citing new evidence of his rehabilitation.[2] The trial court determined the second petition was procedurally barred, as follows:

> "[Appellant's counsel's] position is essentially there's nothing that says you can't do this. The Court -- there is no case law on the topic. The Court has looked at some of the case law, and the only case the Court could find that dealt with the good cause provision within [section] 1170.126 was

---

[2] The petition itself is not contained in the record on appeal. However, the date of filing is undisputed.

a situation where the petitioner didn't make the two-year cutoff. And the court in that case did find there's good cause to file a second petition.

"I will deny your application on that basis . . . . This statute is pretty clear there's a two-year cut off. A good cause exception doesn't deal with anything beyond the first petition being filed. I think you have some good arguments that can be made for [appellant] given the amount of time since the last petition and his progress, his institutional progress, all the chronos that he has in there and his conduct while he was in prison. Seems to me it's a legislative issue here.

"I think the strict reading of the statute is that the two years is two years from the first -- within two years -- two years -- filing your petition within two years of the first and only petition within two years of the two-year window which expired on November of 2014.

"The case law underlying the [S]upreme [C]ourt decision on [appellant's] case really dealt with the issue what standard will be applied in considering dangerousness to the public, basically the Prop 47 -- the Prop 47 standard did not apply to [section] 1170.126 petitions.

"So I am going to deny the petition on the grounds that the statute does not allow for a second petition to be filed beyond the two-year window, that the good cause exception within the statute does not apply to a filing of a petition beyond the two-year period."

This timely appeal followed.

## DISCUSSION

Appellant contends Proposition 36 must be construed to permit successive petitions. Additionally, while he acknowledges that his second petition was filed outside the statutory limitations period, he contends his rehabilitative progress in prison constitutes good cause to excuse the delay.

The plain language of section 1170.126 is silent as to the availability of successive petitions. The statute provides for the filing of "a petition" (§ 1170.126, subd. (b)), and includes no specific mechanism, procedure, or criteria for the filing of successive petitions. At the same time, the statute does not prohibit successive petitions, and the use of the singular "petition" is generally deemed to also include the plural. (§ 7 ["the

4.

singular number includes the plural, and the plural the singular"].)  The plain language of the statute is therefore susceptible to contrary interpretations and does not resolve whether successive petitions are permitted.  Nor does the plain language resolve whether successive petitions, if permitted, may be filed beyond the statute of limitations upon a showing of good cause.

We conclude that we need not resolve these issues in the instant case.  As we explain, even if we assume that section 1170.126 permits successive petitions to be filed beyond the statute of limitations in some circumstances, changed circumstances relating to an inmate's rehabilitative progress cannot, as a matter of law, constitute good cause for such delay.

## I.    Principles of Statutory Interpretation

The scope and meaning of a statute is a question of law that we review de novo. (*People v. Gonzales* (2018) 6 Cal.5th 44, 49; *People v. Prunty* (2015) 62 Cal.4th 59, 71.) We apply the same rules of construction to statutes adopted by the voters as to statutes adopted by the Legislature.  (See *People v. Park* (2013) 56 Cal.4th 782, 796.)  Our fundamental task in construing a voter-enacted statute is to ascertain and give effect to the intent of the voters.  (See *ibid.*; *People v. Scott* (2014) 58 Cal.4th 1415, 1421.) " ' "We begin by examining the statute's words, giving them a plain and commonsense meaning." ' " (*Scott*, at p. 1421.)  " '[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible.' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)  When the statutory language is clear and unambiguous, we presume the voters meant what they said.  (See *People v. Lawrence* (2000) 24 Cal.4th 219, 230-231.)  "When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' " (*People v. Rizo* (2000) 22 Cal.4th 681, 685.)

## II. The Three Strikes Reform Act

Proposition 36 was passed by the electorate on November 6, 2012, and the Act went into effect the following day. (Initiative Measure, Prop. 36, §§ 6, 10, approved by voters, Gen. Elec. (Nov. 6, 2012); see Cal. Const., art. II, § 10, subd. (a).) The Act prospectively reduced the punishment previously proscribed for certain defendants convicted of a third strike offense. Additionally, as stated above, it created a "retroactive relief procedure" for certain inmates serving an indeterminate, third strike sentence under the former Three Strikes law. (*Drew*, *supra*, 16 Cal.App.5th at p. 256; see § 1170.126, subd. (b).)

The then newly enacted resentencing procedure allows an inmate to file "a petition for a recall of sentence" within two years of Proposition 36's effective date, "or at a later date upon a showing of good cause." (§ 1170.126, subd. (b).) An inmate is eligible for resentencing only if (1) he or she is serving an indeterminate "third strike" sentence for a felony that is not considered serious or violent, as defined by law; (2) the third strike sentence was not imposed for one of certain enumerated, disqualifying offenses; and (3) the inmate had no prior conviction for any of certain other enumerated, disqualifying offenses. (§ 1170.126, subd. (e).) If the inmate meets the eligibility requirements for resentencing, he or she will be resentenced by the trial court, unless the court determines, in its discretion, "that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

The time to petition for recall of sentence pursuant to Proposition 36 expired in November 2014. (§ 1170.126, subd. (b).) Since that time, an inmate may bring a recall petition only upon a showing of good cause for the delay. (*Ibid.*)

## III. Analysis

Section 1170.126 does not define "good cause." However, where the language of a statute uses terms that have been judicially construed, we presume that the voters intended the same construction already placed upon them by the courts, unless a contrary

6.

intent appears. (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1100.) Courts have generally considered the following factors relevant to a determination of good cause: " '(1) the nature and strength of the justification for the delay, (2) the duration of the delay, and (3) the prejudice to either the defendant or the prosecution that is likely to result from the delay.' "[3] (*Drew*, *supra*, 16 Cal.App.5th at p. 257.) Courts must also "consider all of the relevant circumstances of the particular case, 'applying principles of common sense to the totality of circumstances.' " (*Ibid.*)

Our Supreme Court has held that defendants with nonfinal judgments who did not timely file a petition for recall of sentence because they were litigating on direct appeal the question of whether they were entitled to automatic resentencing under the Act "will generally have good cause for filing late petitions." (*People v. Conley* (2016) 63 Cal.4th 646, 662, fn. 5.) This court has similarly held that the pendency of appellate proceedings and related lack of jurisdiction over the cause in the trial court would constitute good cause for a delay in filing a recall petition under the Act. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 177.)

However, in *Drew*, the Court of Appeal concluded the trial court did not abuse its discretion in finding the petitioner had not demonstrated good cause for a two-year delay. There, the petitioner lacked counsel and claimed he was unaware he was eligible for resentencing until our Supreme Court clarified in 2015 that he was not barred from bringing a recall petition. (*Drew*, *supra*, 16 Cal.App.5th at pp. 259-260; see *People v. Johnson* (2015) 61 Cal.4th 674, 680 [clarifying that an inmate could be eligible for resentencing on a qualifying offense notwithstanding his convictions for other nonqualifying offenses].) "Were [the petitioner's] contention accepted," the court

---

[3] The third factor, however, generally will not be relevant in determining "good cause" under section 1170.126. (*Drew*, *supra*, 16 Cal.App.5th at p. 258.)

reasoned, "it would be tantamount to erasing the limitations period from the statute in all but the most unusual of circumstances." (*Drew*, at p. 259.)

The "good cause" exception suggests that not every delay in filing a recall petition is excusable. (*Drew*, *supra*, 16 Cal.App.5th at p. 257.) The above cases generally suggest that good cause may be found where the delay occurred due to circumstances outside the inmate's control. Here, no circumstances prevented appellant from timely filing a recall petition. To the contrary, he timely filed a petition, which was denied on the merits. Indeed, appellant does not argue that good cause prevented him from filing a timely petition, but rather that changed circumstances should permit him a second opportunity for relief.[4]

However, where the Legislature has intended to provide successive opportunities for relief based on changed rehabilitative circumstances, it has expressly done so. For example, California law expressly contemplates successive parole hearings at regular intervals (§ 3041.5, subd. (a)(6) [Board of Parole Hearings shall set date for successive hearings]; § 3051 [youth offender parole set during the 15th, 20th, or 25th year of incarceration]), and permits additional hearings upon a showing of a material change in circumstances or the discovery of new information. (§ 3041.5, subd. (d)(1).) These statutes demonstrate that the Legislature knows how to provide for successive relief procedures when it desires to do so. (See *People v. Murphy* (2001) 25 Cal.4th 136, 159.) We have no reason to conclude the electorate is not equally capable. (*People v. Shabazz* (2006) 38 Cal.4th 55, 65, fn. 8 ["voters ' "are presumed to know the law" ' "].) The lack

---

[4]    In this regard, appellant's case differs from those he relies on for the proposition that new evidence may establish good cause to permit a successive petition for writ of habeas corpus. (See *In re Clark* (1993) 5 Cal.4th 750, 774-775, 779 [facts previously unknown to the petitioner may justify successive habeas petition]; superseded by statute as stated in *Briggs v. Brown* (2017) 3 Cal.5th 808, 841-842.)

of such provisions in Proposition 36 suggests the voters did not intend to provide for untimely, successive petitions based on an inmate's changed rehabilitative circumstances.

Additionally, construing section 1170.126 to permit successive petitions beyond the limitations period upon a showing of rehabilitative progress "would be tantamount to erasing the limitations period from the statute in all but the most unusual of circumstances." (*Drew*, *supra*, 16 Cal.App.5th at p. 259.)  Doing so would permit petitions to be filed years, or even decades, after the limitations period expired.  The court would effectively be required to redetermine whether an inmate had demonstrated he or she no longer posed an unreasonable risk of danger to public safety in order to determine whether an inmate's rehabilitative progress was sufficient to constitute good cause.  Thus, the court effectively would be called upon to determine the merits of untimely petitions upon even the barest showing of rehabilitative progress, thereby excusing nearly any delay in filing a recall petition.  Construing the statute to permit belated, successive petitions upon a showing that the inmate had progressed in his or her rehabilitation would thereby render the statute of limitations surplusage, a result we must avoid if possible. (*Hudec v. Superior Court* (2015) 60 Cal.4th 815, 828.)

Finally, to the extent the "good cause" exception in section 1170.126 is ambiguous, the history of the law makes clear the voters did not intend to permit successive petitions beyond the statutory limitations period on this basis.  (*People v. Rizo*, *supra*, 22 Cal.4th at p. 685 [where the plain language of the statute is ambiguous, we may resort to extrinsic aids to determine the voters' intent].)  The Voter Information Guide contains analysis by the Legislative Analyst, which explained the resentencing procedure under Proposition 36, and stated, "Offenders whose requests for resentencing are denied by the courts would continue to serve out their life terms as they were originally sentenced."  (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) analysis of Prop. 36 by Legis. Analyst, p. 50 (Voter Information Guide).)  The Legislative Analyst also explained that, while Proposition 36 would result in decreased state correctional and parole costs,

the resentencing procedures would result in some additional resentencing costs to the state. (Voter Information Guide, *supra*, analysis of Prop. 36 by Legis. Analyst, p. 50.)

The Legislative Analyst characterized these resentencing costs as a "one-time cost" that would last only "a couple of years":

> "***Resentencing Costs.*** This measure would result in a *one-time cost* to the state and counties related to the resentencing provisions of this measure. These provisions would increase court caseloads, which would result in added costs for district attorneys, public defenders, and county sheriff's departments that would manage this workload and staff these resentencing proceedings. In addition, counties would incur jail costs to house inmates during resentencing proceedings. These costs could be a few million dollars statewide *over a couple of years*." (Voter Information Guide, *supra*, analysis of Prop. 36 by Legis. Analyst, p. 50, second & third italics added.)

The same analysis was also summarized near the beginning of the Official Title and Summary of Proposition 36: "One-time state and county costs of a few million dollars over the next couple of years for court activities related to the resentencing of certain offenders." (Voter Information Guide, *supra*, Summary of Legislative Analyst's Estimate of Net State and Local Government Fiscal Impact, p. 48.) However, the overall cost-savings effect of the measure was one of the arguments in favor of Proposition 36 touted by its proponents. (Voter Information Guide, *supra*, Argument in Favor of Prop. 36, p. 52.)

The Voter Information Guide indicates that the voters understood Proposition 36 involved competing cost concerns, but found acceptable the costs associated with a single opportunity for resentencing within a relatively brief limitations period. Additionally, the Voter Information Guide suggests the voters understood that the denial of a recall petition on the ground the offender would pose an unreasonable risk to public safety would result in the inmate serving out his or her original sentence. (Voter Information Guide, *supra*, Analysis of Prop. 36 by Legis. Analyst, p. 50.) The Voter Information Guide does not

10.

support a conclusion that the voters intended to afford such inmates additional, successive, and infinite opportunities for relief based on rehabilitative progress.

We acknowledge appellant's point that the overarching purpose of Proposition 36 was to shorten prison sentences for qualifying offenders. However, the voters also were motivated to protect public safety. (*People v. Conley*, *supra*, 63 Cal.4th at p. 658.) To effectuate that purpose, the voters vested the trial court with discretion to determine whether the release of any qualifying offender would result in an unreasonable risk of danger to public safety. (§ 1170.126, subd. (f).) Neither the plain language of the statute or the Voter Information Guide suggests the voters intended that determination to be revisited, even where the passage of time has resulted in additional opportunities for rehabilitation and, potentially, a reduced likelihood the offender would present a risk to public safety if released.

In sum, the language and structure of the statute do not permit an inference a showing of rehabilitative progress constitutes good cause to permit an otherwise untimely successive petition, and the history of the law confirms the voters did not intend to permit such filing.[5] Accordingly, the court did not err in denying appellant's petition for recall of sentence.

---

[5] Appellant also argues that his untimely filing was excused by a material change in law, specifically *People v. Williams* (2018) 19 Cal.App.5th 1057. *Williams* held that the dangerousness determination required under section 1170.126, subdivision (b) requires consideration of "when, if ever, defendant would be released if the petition was granted." (*Williams*, at p. 1064.) The appellate court found an abuse of discretion where the trial court considered only the petitioner's immediate dangerousness, and not whether the petitioner would still pose a danger at his earliest possible parole date 24 years later, when he would be 77 years old. (*Id.* at pp. 1062-1064.) Here, appellant suggests the trial court abused its discretion in denying his 2013 petition by failing to consider whether appellant would remain dangerous five years later, when he would have been released had the petition been granted. He did not present this argument below, and it is therefore forfeited. In any event, appellant's 2013 petition was fully litigated and affirmed on appeal. We therefore decline to consider this claim of error.

# **DISPOSITION**

The judgment is affirmed.

DETJEN, J.

WE CONCUR:

LEVY, Acting P.J.

PEÑA, J.

12.